## BURCHETT v. STATE

Ohio Appeals, 4th Dist., Ross Co.
Decided May 9, 1930

F. N. R. Redfern, Adelphi, and George W. Christman, for Burchett.

Phil A. Henderson, Logan, and Eugene Wright, Logan, for State.

**MAUCK, J.**

It is argued that the confession or confessions made by Burchett were not properly obtained and ought not to have been allowed in evidence. The prosecuting attorney took the stand and testified that he made no promises or threats to the defendant, but did tell him that it would be easier for him if he told the truth and that the easiest way is the best way. He further testifies that he made to the accused certain statements in regard to testimony that was already available and acknowledged that the statements of fact so made were untrue. The trial court at the conclusion of the examination of the prosecuting attorney in the absence of the jury hold that the evidence of the admission was admissible. Thereupon the jury was recalled and the prosecuting attorney re-examined in the presence of the jury both as to the subject matter of the confession and the circumstances under which it was made, and the court left to the jury the question of determining whether the confession was volun-

402

tary. The method by which the confession was obtained is not commended. The rule is, however, that the fact that false representations were employed to induce a confession does not deprive the state of the right to use such confession where it does not appear that the fraud practiced was calculated to do otherwise than elicit the truth. We follow the doctrine of **Price v. State, 18 O. S. 419,** in holding that this evidence was properly admitted and we further follow the same authority in condemning the method by which the testimony was obtained.

The evidence tends to show that when Burchett was doing the shooting Behrens was on the hillside at a considerable elevation above the accused. The testimony of Behrens' companion is that after the shooting began both of them started to run, and that Behrens was struck by some ball subsequent to the first shot fired and while Behrens was in the act of running. Testimony of the physicians who examined Behrens' body was to the effect that the ball that killed him entered Behrens' left side just below the armpit, passed thru the rib and the left lung, thru the heart, its general tendency being downward. It is now claimed, taking the position of Behrens as testified to by his companion and Burchett's position as testified to by himself, that a ball from the latter's pistol could not have taken the course that the fatal ball in this case actually did take. This argument takes too much for granted. It takes for granted that Behrens' companion knew just where he was when he received the fatal shot notwithstanding the intense excitement under which that witness was undoubtedly laboring at the time. It further takes for granted that Burchett was standing where the empty shells from his pistol were subsequently found when the particular bullet that struck Behrens was fired. This is not necessarily true. It further takes for granted that the course of the bullet thru the body would be in a uniform direction from the point from which it was fired. Experience teaches the contrary. After the bullet struck the decedent's rib its course may have well been changed, and the course it subsequently took has but little significance in indicating the point from which the ball originated. In connection with this there is a little vague testimony that someone else than Buchett fired a shot some where in that neighborhood about the time that he shot, but it is too uncertain and indefinite to have any force in convincing one that Behrens died as the result of that vagrant shot.

Another and a very interesting question arises out of the testimony of Mr. A. F. White. Mr. White is a banker in the city of Logan. He makes guns his hobby. Sometime before the trial Mr. White took one of the pistols, which it was admitted that the accused had used on the night in question, and the ball found in the body of the deceased and made a minute examination of both of them. He describes an experiment made by him showing what marks were discovered by the microscope upon the fatal bullet and how they compare with the rifling in a pistol admittedly fired by the defendant on the occasion in question. There followed this question and answer:

"Q You may now answer the question, from your entire examination what would you say as to whether or not that bullet came out of that gun?
A I would say that there wasn't any question but what this bullet (state's exhibit A) was fired from this revolver (state's exhibit B)."

To this question and answer proper exceptions were saved, and it is now strenuously urged that this testimony ought not have been received. That it was prejudicial, if erroneous, must be conceded. The question is two-fold: first, whether any such testimony is competent, and second, whether Mr. White was qualified to express an opinion as an expert.

1. The possibility of identifying a bullet that has been fired with the firearm from which it was projected is now receiving intensive study by engineers. The Engineers' Foundation of New York is promoting such an investigation by Major Gunther, a professor of Stevens Institute of Technology, who has a highly technical paper on the subject in Mechanical Engineering for February, 1930. The new science if it be a science for want of a better name is known as interior ballistics. Elsewhere Professor Gunther has said:

"Ballistics now is in the same stage that finger printing was in the days when data on the probability of duplication was being accumulated. And it is fully as promising. Building up faith in the evidence obtainable from ballistics is a matter of accumulating data over a period of time. I do not say positively that there are not two identical gun barrels in the world, but I have yet to find them."

Photography was one of the arts that had to fight its way to recognition in the courts, but photographs are now so readily received that the testimony of the one taking them is rarely insisted upon to establish their integrity. The X-ray had less difficulty in obtaining a place in the law of evidence because it seemed to be a mere development of the photograph. Finger print impressions, too, have had to demonstrate their utility as a means of discovering the truth, and it is interesting to see what the Supreme Court of New Jersey said of the acceptance of such testimony when its value was not so well appreciated as it now is:

"In principle its admission as legal evidence is based upon the theory that the evolution in the practical affairs of life whereby the progressive and scientific tendencies of the age are manifest in every department of human endeavor can not be ignored in legal procedure, but that the law in its efforts to enforce justice by demonstrating the fact in issue will allow evidence of those scientific processes, which are the work of educated and skilful men in their various departments, and apply them to the demostration of a fact, leaving the weight and effect to be given to the

effort and its results entirely to the consideration of the jury."

**State v. Cerciellio, 86 N. J. L. 309, 52 L. R. A. (n. s.) 1010.**

Without, therefore, assuming to say that a particular fired ball will bear so distinctive a mark upon it, due to the structure of the gun from which it has been fired, as to enable one to identify the gun, we do hold that this is a proper field of evidence, and it being certainly a field with which the ordinary juror is unfamiliar the opinion of trained, educated and skillful men along that line may be received for what it is worth.

2. As to Mr. White's qualifications. He says that he is not an expert. This, we take it, was a becoming expression of modesty. Whether he was sufficiently educated or experienced was to be determined by the court and not by the witness. Jones in his work on Evidence, Section 1314, quotes with approval this definition of an expert:

"The test to determine whether a witness is qualified as an expert is to inquire whether his knowledge of the matter in relation to which his opinion is asked is such that it will probably aid the trier of the question to determine the truth."

The trial court found Mr. White to measure up to the demands of the definition.

"It is the prevailing rule that the decision of the trial court as to the competency of an alleged expert is a preliminary question resting in the discretion of the court. Unless founded on some error of law, or on serious mistake or abuse of discretion the ruling of the trial court on this preliminary question is not reversible."

**Jones on Evidence, Section 1318.**

There was no error in the reception of the evidence of Mr. White.

Other questions of evidence of less importance have been urged but we find nothing substantial in any of them.

The charge was fair and adequately covered all of the ground upon which the accused asked proper special instructions.

The judgment is affirmed.

Middleton, PJ., and Blosser, J., concur.