furnace was installed; it paid out nothing in its acquisition; no unlawful act was done by defendant in error; it was given the right under the terms of the contract to remove the furnace in default of payments.

Plaintiff in error suffered no loss, detriment or injury either to property or rights. It is an attempt to recover damages for the loss of something which cost it nothing and to which it never had any right, title or interest, no loss or damages to the building being alleged or claimed.

Under the pleadings and agreed statement of facts in this case, and the great weight of authorities, the judgment of the trial court should be and the same is hereby affirmed.

*Judgment affirmed.*

SHERICK, P. J., and MONTGOMERY, J., concur.

MOSLEY *v.* THE STATE OF OHIO.

·(Decided July 9, 1934.)

*Mr. A. Lee Beaty, Mr. E. G. Schuessler* and *Mr. Max Friedman,* for plaintiff in error.

*Mr. Louis J. Schneider,* prosecuting attorney, *Mr. Dudley M. Outcalt* and *Mr. Carson Hoy,* for defendant in error.

RICHARDS, J., of the Sixth Appellate District, sitting by designation in the First Appellate District.

Abraham Wartick was killed by shots from a revolver on January 16, 1934, in a small store operated by him in Cincinnati. On January 18, Isaac Mosley was arrested, charged with the murder, and was indicted on three counts, the first count charging that he killed Wartick purposely and with deliberate and premeditated malice, the second count charging that the murder was committed while in the perpetration of a robbery, and the third count that it was committed while Mosley was attempting to perpetrate a robbery. On the trial of the case the jury returned a verdict of guilty of murder in the first degree, as charged on all three counts of the indictment; there was no recommendation of mercy and the defendant was sentenced to be electrocuted. This proceeding in error is brought to secure a reversal of the judgment, and many claimed errors are assigned.

The employees of Wartick left his store shortly before six o'clock p. m. on January 16, 1934, but Wartick remained in the store alone, with the front door not locked, and was found a few minutes after six o'clock in a dying condition in a little wash room and toilet along the side of the room. His trousers pocket, in which he had been in the habit of carrying money, had been nearly torn from the trousers, and the money was missing. Nine cartridges had been fired, some through the door of the toilet, five bullets entering Wartick's body and others the woodwork nearby. Suspicion was directed toward the defendant Mosley, who was arrested on Thursday, January 18. Mosley denied all

knowledge of the murder. Later, a revolver was found in a box in the house, the revolver being wrapped in store paper and the outer wrapping being a newspaper, all hidden under some clothing. Another officer found a box of cartridges under the sink in the hall. Mosley asserted that he never had owned or possessed a revolver, but the evidence discloses quite conclusively that he did have in his possession a revolver for some weeks prior to the shooting. The revolver which was found was a .38 caliber, and the cartridges were the proper size for that weapon. The revolver, the bullets which entered the body of the decedent, and the empty shells which were found, were sent to a ballistic expert for examination, Col. Calvin Goddard, who is Professor of Police Science in Northwestern University at Chicago. Prof. Goddard subjected the weapon and the missiles to a minute and exhaustive examination and testified that as a result of such examination he could say with certainty that the bullets were fired from the revolver which was submitted to him. His testimony shows that he is a man of much experience in that line, covering a period of many years, and his testimony demonstrates clearly that the bullets were fired from this revolver, which is identified beyond question.

No objection was made to the admission of this evidence, and none could justly be made. One of the earlier cases relating to this class of evidence is that of *Burchett* v. *State,* 35 Ohio App., 463, 467, 172 N. E., 555, a case in which the court, speaking through Mauck, J., considers and affirms the competency and value of the evidence. During recent years new discoveries and methods of reading marks on cartridges, bullets, and the rifling on the inside of the barrels of revolvers, have been made, and the introduction of this kind of evidence has become quite common in cases of this character. The result of reading these marks seems

to be as certain and valuable in determining the identity of a revolver as finger prints are in identifying a human being.

Mosley has a criminal record, having been confined in the Mansfield Reformatory, and his parole had expired shortly before the time Wartick was killed.

In the trial of the case the state offered in evidence a confession claimed to have been made by the defendant. This confession was introduced over the objections of the defense on a contention that it was not voluntarily made. There were in fact two alleged confessions signed by Mosley, one made on Friday night, January 19, or perhaps as late as 1:30 on the following morning, and the other about 10 o'clock on Saturday, January 20. The defendant testified that he was handcuffed to a table on Friday night, and was struck and beaten by members of the police force in an endeavor to make him confess to committing the crime. During that evening he expressed a wish to have his wife sent for, which was done. The claim made by Mosley that he was struck and beaten by the officers has no corroboration, except that his wife stated that after she arrived one of the policemen hit him. The officers, who were charged by Mosley with threatening and maltreating him, testify and emphatically deny that he was beaten or struck or maltreated or threatened in any way. It thus appears that there was a sharp conflict in the testimony as to whether the defendant was beaten or struck or maltreated or threatened at any time after his arrest. It is not claimed that he suffered any such indignity after the first of the two so-called signed confessions was made, and whether there really was any such treatment or threats is a question of fact which was first submitted to the court, who found the confessions to be voluntary. Thereafter the same matter was submitted to the jury.

On this issue, the defendant asked the court, before argument, to give an instruction to the jury containing the following language:

"In deciding whether a confession was voluntarily made or whether the same was introduced [induced] by threats or assaults, you must be guided by the following rule: If the representations, threats or assaults were made by or in the presence of a person having authority or control over the prosecution or the accused, it is to be presumed by you that the confession was produced by such threats or assaults unless it appears that their influence was totally done away with before the confession was made."

The trial judge refused to give that instruction to the jury, but did instruct the jury that if the confession was induced by promises of immunity, or hope of advantage, or threats, or fear of injury emanating from an officer, the confession was not competent. The judge further instructed the jury that if it should appear by the evidence that the officers who made the arrests and interrogated the accused induced the alleged confession by threats or by promises, and the jury should find that the alleged confession was made under the influence of hope or fear, it could not be considered for any purpose whatsoever. We think this was a fair and correct statement of the law relating to the admissibility of confessions.

The request in the form submitted by counsel was defective in that it assumes that there were threats or assaults made, while that claim is disputed by the evidence. The requested instruction, to be complete, should have been preceded by language which would permit the jury to find whether there had been, in fact, threats or assaults, whereas the request assumes that threats or assaults had in fact been made. Counsel for the defendant, as authority for this requested instruction, rely on *Spears* v. *State,* 2 Ohio St., 583, ap-

parently overlooking the fact that there was no conflict in the evidence in that case relating to the threats and assaults. The following statement appears on page 588 of the opinion:

"It is to be further remembered, as applicable to this case, that there is no conflict of testimony. The circumstances under which the confessions were made, were clearly proved, and quite as strongly by the witnesses for the state as by those of the accused. And there was no discrepancy between them."

In the case at bar, there being a conflict in the evidence as to whether threats were made or violence used, the trial judge properly left that to the jury to determine.

Counsel for Mosley further contend that the trial court erred to his prejudice in admitting evidence to the effect that certain witnesses saw Mosley with a revolver a few days before the crime was committed. We find no error in the admission of this evidence, in view of the fact that the defendant had taken the stand and testified that he never owned or possessed a revolver.

The court has carefully examined all the errors assigned and finds none to the prejudice of the plaintiff in error. The evidence is too voluminous to review in detail, but taken all together it was of such a character as to directly connect the defendant with the crime. The charge to the jury was complete and accurate and the verdict and judgment are sustained by sufficient evidence. The judgment will therefore be affirmed.

*Judgment affirmed.*

Hamilton and Ross, JJ., concur.