**STATE, Plaintiff-Appellee, v. MCKINNEY, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 1861.   Decided November 27, 1945.

Mathias H. Heck, prosecuting atty., Fred M. Kerr, asst. prosecuting atty., Dayton, for plaintiff-appellee.

Charles W. Folkerth, Dayton, for defendant-appellant.

## OPINION

By WISEMAN, J.

The defendant-appellant was charged with murder in the first degree and upon trial in the Common Pleas Court, was found guilty of murder in the first degree with recommendation of mercy. The defendant-appellant gave notice of appeal on law and fact. An appeal on law and fact cannot be maintained in a criminal action such as is under consideration by this court.

The court will retain the case as an appeal on law. In order to keep the record straight, the court suggests that counsel for the state prepare a motion for dismissal on law and fact. An entry may be drawn sustaining the motion and retaining the case as an appeal on law.

The defendant-appellant was charged with murder in the first degree under §12400 GC, which so far as it is applicable to this case, reads as follows:

"Who ever, purposely, * * * in perpetrating or attempting to perpetrate * * * robbery * * * kills another, is guilty of murder in the first degree, and shall be punished by death unless the jury in trying the accused recommends mercy, in which case the punishment shall be imprisonment.in a penitentiary during life."

Under this section, the defendant-appellant was jointly indicted for murder with two other persons. The pertinent part of the indictment, omitting the names of the other two persons, is as follows:

"That Robert McKinney, on or about the fifth day of July in the year one thousand, nine hundred and forty-four, in the county of Montgomery aforesaid and State of Ohio, unlawfully, purposely, and while attempting to perpetrate a robbery, killed John E. Herby; contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Ohio."

To this indictment the defendant-appellant entered a plea of "Not Guilty". The defendant-appellant also seasonably gave notice that he would impose a defense of alibi, which alleged that at the time the shooting took place he was in Cincinnati. Upon the trial of the case, the defendant-appellant failed to take the stand in his own defense and there was no testimony whatever introduced in support of the alibi.

The defendant-appellant filed a motion for a new trial, which was overruled, after which the court sentenced the defendant-appellant to imprisonment in the Ohio State Penitentiary for the balance of his natural life.

An Assignment of Errors has been filed as follows:

"First—The verdict and judgment thereon is contrary to law.

Second—The verdict is against the manifest weight of the evidence.

Third—The court erred in admitting the testimony of Hugh Parks, an alleged co-conspirator according to his own testimony, when called by the State, to the ownership of a blue sweater, when the evidence fell short of establishing a conspiracy.

Fourth—The court erred in admitting testimony pertaining to a trick photograph of the defendant used by the State in an attempted identification of the defendant, and prejudicial to the rights of the defendant, and later barred the photo from the jury as an exhibit.

Fifth—The court erred in overruling the motion of the defendant, made at the close of the State's case, to dismiss and discharge him, for failure of the State of Ohio to prove its case beyond a reasonable doubt.

Sixth—The court erred in failing to charge the jury on the lesser degrees of crime under the indictment, and in not ordering his acquittal, when the evidence fell short of establishing a conspiracy, by failing to prove the connection of the defendant with a plan or conspiracy to rob the Brown Derby, which plan or conspiracy, was the basis on which The State of Ohio framed the indictment against the defendant and based its case against him during this trial.

Seventh—Because of misconduct of five women members of the jury in drinking and smoking cigarettes in the barroom of the Brown Derby, after being sworn as jurors in this case, and while viewing the premises of the alleged crime.

Eighth—For all other errors and irregularities appearing on the face of the record."

Counsel for defendant-appellant in his brief has grouped Assignments of Error numbered one, two, three, four and five and the court will also consider them as a group.

The contention made by counsel for defendant-appellant is that the state entered upon the trial of the case on the theory of a conspiracy among several persons accused of the crime and that the state failed to prove a conspiracy. The contention is also made that since the state failed to prove a conspiracy, the defendant-appellant should have been acquitted, and the court erred in his charge to the jury on this issue.

The indictment did not charge conspiracy; neither did counsel for the state contend that a conspiracy was expected to be proven. There was some evidence introduced on behalf of the state which tended to prove a conspiracy. One Hugh Parks testified that he, together with George Arnold, Willy

Moon and the defendant-appellant, Robert McKinney, met on the night of July 3, less than two days prior to the commission of the crime, at the corner of Western Avenue and Gold Street in the City of Dayton and that there a discussion took place between them relative to a plan to rob the Brown Derby. At one place in his testimony, he testified that they were all together at that time and that they were "all talking in general". At another place in his testimony, he testified that he was not sure that the defendant-appellant participated in the discussion. However, there was sufficient evidence introduced to indicate that a robbery was prearranged and that in furtherance of the plan an attemped robbery took place in the early morning of July 5, 1944.

Under the provisions of §12400 GC under which the defendant-appellant was indicted for murder for killing John Herby while "attempting to perpetrate * * * robbery", it was not incumbent upon the State to allege or prove a conspiracy. Counsel for the defendant-appellant contends that inasmuch as the State has not shown which of the two robbers who entered the Brown Derby on the morning of July 5 in an attempt to perpetrate a robbery, fired the fatal shot which resulted in the death of John Herby, that the defendant-appellant cannot be found guilty of murder unless a conspiracy be proven. With this contention the Court cannot agree. Under the provisions of §12400 GC, if two or more persons jointly participate in an attempted robbery and while attempting such robbery, one of the participants kills the victim, all persons who were jointly engaged and participated in the felonious act are equally guilty of murder. One of the leading cases in Ohio which upholds this proposition of law is **Conrad v State, 75 Oh St 52.** While it is true that in that case the principal question for the court to decide was whether or not at the time the shot was fired which killed a police officer while attempting to effect an arrest to prevent the escape of those participating in a burglary, the burglars were still in the act of participating in a burglary within the meaning of §12400 GC, nevertheless, the Court did lay down the principle of law which the court regards as the law of this state. This principle of law is stated in the third syllabus as follows:

"When two, in furtherance of a common design, enter upon the perpetration of the burglary armed and prepared to kill if opposed, and while so engaged are discovered, and in the effort to escape one of the burglars kills one who is

trying to arrest him, both burglars are equally guilty of homicide, although one of them was not armed with a deadly weapon and also such killing was not part of the pre-arranged plan."

The above cited case is found in Volume 6, L. R. A. (New Series) Page 1154, under which there is a collection of opinions of courts of other states in accordance with the principle laid down in Conrad v. State. An extensive note on this proposition of law follows the citation of this same case in 8 Anno. Cases, 966.

In the case at bar, the facts are stronger than in the case of Conrad v. State, supra, for the reason that the fatal shot was fired inside of the Brown Derby in the attempt to perpetrate a robery. Both of the participants carried guns and both entered the room where the attempted robbery took place. The evidence in this case was that on the morning of July 5, 1944, Martha McCoy, the head waitress and John Herby, the operator of the Brown Derby, were in the main dining room near the end of the bar, discussing the question of employing additional help to operate the bar and restaurant. This conversation took place at about 4:00 o'clock, a. m. John Herby stepped around the end of the bar and as he did so, noticed one of the robbers standing a few feet back of Martha McCoy. Upon seeing the robber, he exclaimed to Mrs. McCoy: "Look Marty". As she turned, she faced a robber and also noticed another robber near a stair case a few feet further distant from her. Mr. Herby asked the robbers what they wanted. One of the robbers spoke up and said: "We want your money." He then motioned Mrs. McCoy over toward the safe and ordered both of them to put up their hands. While this was going on, the other robber came closer. Thereupon Mrs. McCoy was ordered to go to the basement. As she started to the basement, one of the robbers opened the door and gave her a shove, which caused her to strike her head against the slanting ceiling of the stairway. The impact of the shove caused her to go down several steps on the stair case. At about the time she was regaining her balance, she heard a shot fired and heard Herby say he was shot. At this instant she turned around and saw the two men who were standing within plain view close to John Herby. Herby's hands were still up but he was sinking to the floor and his hands were being lowered. She was unable to testify which one of the robbers fired the fatal shot. While she was in the stair case, she heard the robbers running across the room and a minute later heard the cry of John Herby for help. When she entered the restaurant, the robbers had fled.

She described one of the robbers as being short and the other one tall. The one that was short, had on a suit coat, and the tall one had on a blue sweater. Each had a handkerchief over his face, and each carried in his hand a revolver. Later she identified the man who wore the suit coat as Willy Moon, and the tall one wearing the blue sweater as Robert McKinney, the defendant-appellant herein.

Counsel for defendant-appellant complains of the introduction of testimony relative to the identification of defendant-appellant through the use of a photograph of himself, and also the sweater. Sometime after the crime had been committed, the witness was shown a number of photographs and from among the number shown her, she identified the photograph of Robert McKinney as being the photograph of one of the robbers. She was also shown at least two sweaters, the first one not being identified and the second one being identified as the blue sweater worn by one of the robbers whom she identified as being Robert McKinney.

One of the waitresses, Sereda Spangler, testified that Mrs. McCoy, as was her custom, about 2:30 o'clock, a. m. on the morning John Herby was killed, took the other waitresses home in an automobile; that they left the restaurant through the rear door which leads to the alley; that to the rear of the restaurant and adjacent to the alley, there is a space for parking cars; that in this parking space she, Miss Spangler, noticed a strange car; she testified that it was a car painted a light tan or brown, sloping at the back and with white tires. Sometime after the crime was committed, Miss Spangler went to the B & D Body Shop at 2900 Linden Avenue, and there examined a number of cars and identified one of the cars in the shop as being the same car which she saw at the rear of the Brown Derby on the morning of the murder. This car was identified as belonging to Robert McKinney by the testimony of Hugh J. Sacksteder, Deputy County Clerk, who testified from the records filed in the County Clerk's office. A month or so after the crime was committed, a blue sweater was taken by the police from Hugh Parks, who testified that the sweater belonged to Robert McKinney, and that a short time prior to the time it was taken by the police, Robert McKinney had loaned the sweater to him.

The Court has reviewed this evidence at some length for the purpose of showing that Robert McKinney was one of the participants in the attempted robbery, and engaged with the other robber in the perpetration of an attempted robbery within the meaning of §12400 GC.

The Court has also reviewed the evidence because of the Assignment of Error number two to the effect that the "verdict is against the manifest weight of the evidence".

This court does not believe that the verdict was against the manifest weight of the evidence. Furthermore, we hold that Robert McKinney, as the evidence shows, was one of the participants who engaged in an attempt to rob John Herby, and that as a matter of law, even though the evidence does not show that he fired the fatal shot, being a participant in an attempted robbery, he is equally guilty as the one who did fire the fatal shot, of murder in the first degree under the provision of §12400 GC.

We therefore hold that the verdict and judgment of the lower court is not contrary to law and that the court did not commit an error in admitting the testimony of Hugh Parks relative to the ownership of the sweater. Neither did the court commit an error in admitting the testimony of Martha McCoy relative to the identification of the defendant-appellant by means of a photograph and the sweater. Furthermore, the Court holds that the trial court did not commit an error in overruling the motion of the appellant made at the close of the state's case to dismiss and discharge him for failure of the State of Ohio to prove the appellant guilty beyond a reasonable doubt. We have disposed of Assignments of Error numbered one, two, three, four and five.

As to the sixth Assignment of Error that the Court committed an error in failing to charge the jury on a lesser degree of crime under the indictment, the rule of law is that where murder in the first degree is charged and the evidence shows that murder in the first degree was committed, and there is no evidence to show that a lesser crime was committed, the court is not required to charge the jury on the lesser crime, and in fact, it has been held that to do so is prejudicial error. One of the leading cases in Ohio upholding this principle of law is **Malone v State, 130 Oh St 443.** The principle of law is stated in the first syllabus as follows:

"Where one is indicted and tried for murder in the attempted perpetration of robbery under §12400 GC, no instruction on any lesser grade of homicide than murder in the first degree is requisite or proper when evidence to support the same is lacking."

This principle of law is also stated in **State v Rober, 64 Oh Ap 39,** as follows:

"Where the evidence clearly shows that murder in the first degree has been committed, and that is the only offense charged in the indictment, it is not error for the trial court to refuse to charge the jury that the defendant might be found guilty of a lesser crime."

See also 21 O. Jur., Section 14, page 51.

Accordingly, this court finds that the trial court did not commit prejudicial error in failing to charge the jury on a lesser crime.

The seventh Assignment of Error, which is misconduct on the part of the five members of the jury in drinking and smoking in the bar room of the Brown Derby while viewing the premises. This alleged misconduct is one of the grounds on motion for a new trial and supported by the affidavit of Charles W. Forkerth, counsel for the defendant-appellant. A counter affidavit was filed by Floyd A. Kilmer, Court bailiff, who had charge of the jury at the time it viewed the premises, and an affidavit by Fred M. Kerr, Assistant Prosecuting Attorney. The trial court overruled the motion for a new trial without any further evidence being introduced. This court does not believe the jurors were guilty of such misconduct which showed bias or prejudice on their part or that they were moved during the trial of the case, or in arriving at the verdict, by passion or prejudice against the appellant.

The eighth Assignment of Error is the usual blanket statement that "for all other errors and irregularities appearing on the face of the record".

The court has read the entire record, has considered the arguments of counsel and examined the authorities cited in the briefs, and after due consideration of all of the evidence and the contentions made by opposing counsel in this case, this court does not find in the record where the trial court committed any error prejudicial to the defendant-appellant either in the conduct of the trial, the admission of testimony or the charge to the jury. This court is of the opinion that the defendant-appellant had a fair trial, and that the evidence is sufficient to justify a verdict of the jury in finding the defendant-appellant, guilty of murder in the first degree as charged in the indictment.

The judgment of the court below is affirmed.

HORNBECK, P. J., and MILLER, J., concur.