**COLUMBUS (City), Plaintiff-Appellee, v. TREADWELL, De-**
**fendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 3849. Decided March 8, 1946.

Glenn E. Kemp, Police Prosecutor, Columbus, for plaintiff-appellee.

Ray E. Hughes, Columbus, H. Alfred Glascor, Columbus, for defendant-appellant.

## OPINION

By HORNBECK, P. J.

This is an appeal from a judgment of the Common Pleas Court affirming a judgment of the Municipal Court of the City of Columbus upon a verdict of a jury, convicting the defendant of violation of Section 1089-1 of the ordinances of said city.

At the outset we call attention to an omission in the record. There is no formal judgment pronounced upon the verdict of the jury. The basis of a judgment is found in the sentence of the Court which appears in the bill of exceptions but is not carried on the half sheet or journalized. A judgment is essential to an appeal.

Upon a technical review of this record, it would be necessary to remand the files through the Common Pleas Court to the Municipal Court for the preparation of a nunc pro tunc judgment entry. Inasmuch as counsel have prosecuted the appeal through the Common Pleas Court and have prepared all of the briefs and argued the cause in this Court, we pass upon the errors assigned with the understanding that the judgment entry will be spread upon the record nunc pro tunc. 15 Am. Jur., 113.

The defendant was tried by a jury and convicted of the violation of Section 1089-1 of the ordinances of the City of

Columbus. The specific charge was that the defendant did on or about the 17th day of May, 1944, within the City of Columbus, Franklin County, State of Ohio, unlawfully have in his custody or under his control memoranda and slips of a number of shares in a scheme of chance. Motion for new trial was overruled and defendant, according to the bill of exceptions, sentenced to pay a fine of $500.00 and to serve six months in the Columbus workhouse. It is from this judgment the appeal is prosecuted.

Fourteen errors are assigned some of which we specifically consider and all of which we have considered generally. The first error assigned is that the trial court erred in overruling motion of defendant, made at the opening of this case to quash the affidavit filed against the defendant.

The ordinance involved is Section 1089-1 as amended April 3, 1944:

"Whoever shall within the City of Columbus have in his possession, or in his custody, or under his control, any ticket, check, writing, slip, paper or document, which represents or is a memorandum of, or is evidence of, or is intended to be used as a memorandum or evidence of, or which is designed or intended to be used in the process of making, settling, paying, registering, evidencing, or recording, a number of shares or an interest in a lottery, 'policy', or scheme of chance, by whatever name, style, or title denominated or known, whether located or to be drawn, paid, or carried on within or without this city, shall be guilty of a misdemeanor and upon conviction shall be fined not more than five hundred dollars, or imprisoned not more than six months, or both."

It is asserted that the affidavit does not state facts constituting an offense and after a motion to quash, a demurrer was filed and overruled which is made the subject of the second assignment of error.

It will be noted that it is made an offense by the ordinance for one to have the prohibited articles in his possession, or in his custody, or under his control. Here it is averred that the defendant had the prohibited articles in his custody, or under his control and the verdict was a general verdict of guilty. This is not good procedure because manifestly the defendant is found guilty either of having the number slips in his custody or having them under his control. This does not carry that degree of certainty which ordinarily should be employed in an affidavit or a verdict thereunder.

In the factual development of this case there is no discernible difference between the offense of having number slips in custody or having them under control. It is conceivable that a state of facts would require differentiation between custody and control and certainly between possession, custody, or control. The ordinance is involved and prolix but, resolving it into the simplest terms in its application to the charge sought to be lodged against the defendant in this case, it should be read:

"Whoever shall within the City of Columbus have * * * in his custody, or under his control, any * * * slip, * * * which * * * is a memorandum of, * * * a number of shares * * * in a * * scheme of chance, * * *."

It is probable that the ordinance makes it an offense to have possession, custody or control of a ticket, check, writing, slip, paper or document, which is a memorandum of a number of shares in a scheme of chance. The affidavit here does not charge that the ticket is a memorandum of a number of shares, etc.

The verdict is a general finding of guilty as charged. This, then, makes a determination that the defendant is guilty of having in his custody, or of having in his control the articles mentioned in the affidavit. Manifestly, this verdict is inexact because it finds him guilty of having custody or control. No doubt a charge can properly be lodged against the defendant of having possession, or control or custody but a verdict- to respond to such charge should be definite.

We make the foregoing observations somewhat at length because they may be helpful if this case is retried.

There is a technical objection to the form of the affidavit but we are not prepared to hold that upon the whole it does not properly state an offense under the ordinance.

It is also claimed that the search warrant was invalid in particulars set forth in the brief and that the evidence secured in the execution of the warrant should not have been accepted against the defendant. We have recently, in two cases, City of Columbus v. Smith, No. 3853, and City of Columbus v Meadley, 46 Abs 87, held to the contrary upon the authority of State v Lindway, 131 Oh St 166, 4th and 5th syllabi.

We have considered all of the other errors assigned but, except in the instances wherein they may be discussed in the succeeding controlling question, we give no further attention to them and hold that no one of them constitutes prejudicial error to the substantial rights of the appellant.

We come then to the vital and determinative question on this appeal, namely, the sufficiency of the evidence to support the verdict and judgment of guilt of the defendant of the offense charged. The affidavit charges that the defendant had in his custody or under his control memoranda and slips of a number of shares in a scheme of chance.

Upon the accusation three police officers testified. Through one of them the exhibits in the case were offered. At the conclusion of the city's case, a motion for a directed verdict was interposed, ruling upon which was reserved and a like motion, at the conclusion of all the evidence, was overruled.

Upon direct and cross-examination of the defendant it developed that he had prior to 1943 engaged in some form of the "numbers business." This information was first brought onto the record by examination of the defendant in chief. Counsel for the City then, at considerable length, inquired as to the system followed by the defendant in the operation of the so-called "numbers business." Upon an inquiry as to "what was your system" counsel for the defendant interposed an objection which was overruled. In probability, this objection should have been sustained. **Maranda v State, 17 Oh Ap 479.** It does not appear whether or not the defendant had been convicted of any offense in connection with number writing. The offense charged was not such as would have permitted the introduction of the commission of other offenses to show scienter or a scheme of operation. Had the defendant been convicted under a municipal ordinance of any form of numbers gambling, this could not have been shown for any purpose even to affect his credibility. **Coble v State, 31 Oh St 100.** If admissible on cross-examination, which we do not hold, it could affect only his credibility. **State v Carter, 15 Oh Ap 545.**

It is certain that this testimony could not have been received as substantive evidence to prove the commission of the offense for which the defendant was on trial. **Whiteman v State, 119 Oh St 285.** The jury was not instructed as to the purpose for which this class of testimony could be considered by it and no request made nor suggestion given to the Court that he inform the jury of such limitation. We cannot escape the conviction that this testimony, some of which was

improperly admitted and some without objection, had material effect on the verdict which the jury returned.

It must also be observed that the burden in this case at all times was upon the City to establish by its evidence, in the first instance and eventually upon the whole record, the guilt of the defendant by proof beyond a reasonable doubt. The defendant was not put to the necessity of making explanation as to his connection with the offense charged unless and until the City had offered testimony either directly establishing the elements of the offense or such testimony as raised a presumption of his guilt. Nor does the fact that the defendant elected to take the stand relieve the State from the obligation of meeting its burden of proof; or that he undertook to establish that he did not have custody or control of the exhibits shift the burden from the City.

There is no direct evidence of the defendant's custody or control of the subject matter of the exhibits. If it be established it must be done either by circumstantial evidence or by admission of defendant, if they are broad enough to support his conviction.

The factual developments necessary to an appreciation of the question under consideration taken from the testimony of the City are, that the place where the slip and memoranda were found is one of two apartments on the third floor of a building on East Long Street, Columbus, No. 877 being the number of a west storeroom on the ground floor of said building, No. 879, the number over the entrance to the stairway which goes to the second floor on which there are two rooms, and No. 881, a storeroom on the ground floor. Presumably the third floor apartments carry the numbers of the ground floor room under them. The defendant had an office on the second floor from which floor a stairway goes up to the third floor on which there are the two apartments in one of which the gaming paraphernalia was found. The officers went up the stairway and found the defendant in his office. His wife also was there. She left and later was seen going up the stairs to the third floor. The officers made inquiry and searched the office of defendant and found no contraband. One of the officers followed the defendant's wife and states that she was seen to rap at one of the apartments of the third floor and was admitted. The officer then notified his associates and they went to the door through which defendant's wife had entered and knocked, but were not admitted. They then called down to the defendant to learn if he had a key to the apartment and he answered

that he did not and volunteered that there was an entrance to the room by the back way. One of the officers then came up the back entrance, entered by a door which was open, opened the front door and thereupon the other officers and the defendant entered the room.

The police officers who participated in the search and arrest were Lt. Frank M. Johnson, Officer Paul Fulton and Officer Thomas Sawyer. One complete number slip only was found in a wastebasket in the apartment although pads of blank number slips were found. Other papers which may have been records of transactions in the number game were also found on a table in the room and an adding machine. On the table was considerable money both in coin and currency. Later a bag of money was found under a pillow on a couch in the room. Much weight is attached to the conduct of the defendant at the time the money was found to which we advert later, as we will also to the statements attributed to the defendant after his arrest and when being transported to police headquarters.

There is not a scintilla of evidence to the effect that the defendant owned the building in which was located the apartment in which the contraband was found. There is some proof that he had some articles stored in one or both of the ground floor rooms and it is admitted he occupied the second floor but there is no proof whatever that he had any possession or right to possession or control of the third floor, or that he had any access to or means of entering the apartments on that floor. One officer at least, testified that they were occupied as living quarters and while an effort was being made to get into the apartment in which the property was found, Officer Fulton went to the other apartment and talked to a woman occupant to secure any information that might be helpful. Nor is there any direct proof that the defendant or any of his agents, employees or operators was in the room where the paraphernalia was found prior to the search. Manifestly, then, custody or control of the room and more particularly the gaming paraphernalia must be found upon the proof, if at all, from the circumstances appearing.

Generally, to convict a person on circumstantial evidence,

"it is necessary not only that the circumstances all concur to show that the prisoner committed the crime and

be consistent with the hypothesis of guilt, since that is to be compared with all the facts proved, but that they be inconsistent with any other rational conclusion and exclude every other reasonable theory or hypothesis except that of guilt."

20 Am Jur 1069.

The same rule as to the quantum of proof upon circumstantial evidence attends in Ohio. First syllabus of **Carter v State, 4 Oh Ap 193:**

"Where reliance for conviction is placed on circumstantial evidence, the jury should be instructed that the facts and circumstances upon which the theory of guilt is based should be shown beyond a reasonable doubt, and when taken together must be so convincing as to be irreconcilable with the claim of innocence and admit of no other hypothesis than the guilt of the accused."

It is likewise recognized both in civil and criminal procedure that an inference cannot be based upon another inference, or upon a fact the existence of which in itself rests upon an inference. Nor can an inference be based on, or drawn from a presumption, or as is sometimes stated, a rebuttable presumption. 20 Am Jur 168; 95 A L R 166; **Sobolovitz v Lubric Oil Co., 107 Oh St 204.**

How then does the testimony in this case stand the test of the controlling law heretofore enunciated?

If it had appeared that the defendant owned, leased or had dominion over the third floor apartment in which the contraband was found this, in itself, would not directly establish that he possessed, controlled or had in his custody the articles found in that room. It would, however, raise a presumption, or at least an inference, of such possession, control or custody and unexplained would support a finding of the fact. This would only be true because of a presumption or inference which arose by virtue of a fact established. But here the basic fact upon which the one inference could be drawn, which would have convicted the defendant, is not established.

What does appear is an attempt to show by a state of facts an inference that the defendant was in control of the articles in the third floor apartment. How was this done? First, by showing that the defendant's wife went to the door

of the third floor apartment and was admitted. This fact is established, but from it must flow the inference if defendant is to be bound, first, that his wife was acting for him which, though not permissible, is inference No. 1; second, that because she had access to the room, defendant also had access; and a third inference, that his agent having access to the room, he may be held to have custody over the contents of that room. Manifestly, this is predicating one inference upon two others and will not support proof of the ultimate fact at issue.

But, it is said that the defendant upon entering the apartment took the money off the table and put some or all of it in his pocket. Upon this question we must look to the record. The defendant testifies that he only took the money after Lt. Johnson told him to take it. Obviously, the best qualified witness, and probably the most dependable upon this subject, would be Lt. Johnson because it is conceded that he was in charge and that he gave the order, whatever it was, to the defendant respecting the money. At page 57 of the record he testifies on the subject:

"Q. Now the bag where the money was, did you or the other officers look into that bag to see whether or not you could find any number slips?

"A. We just opened the bag. If I remember right I just looked in it and sat the bag over in front of Mr. Treadwell.

"Q. Now I will ask when you turned the money over to Mr. Treadwell you did that because, as you said, you didn't want the responsibility of holding it—or words to that effect.

"A. I told Mr. Treadwell to take it because I didn't want the responsibility of having to count it and holding it as evidence.

"Q. In other words, he took the money in pursuance to your suggestion?

"A. Well, he had the money in his hand when I told him that.

"Q. The bag too?

"A. **No, we hadn't found the money.** (Viz., the bag.)

"Q. And you told him to keep the money for that purpose?

"A. Yes, sir."

The effect of this testimony, as we interpret it, is that before the bag of money was found and while the defendant

had the money off the table, or some of it, in his hand he was instructed by Lt. Johnson to hold it. True, the testimony of the other officers is more damaging to the defendant in that they say the defendant picked up and pocketed the money before any instruction or suggestion was made to him by Lt. Johnson as to keeping it. Officer Fulton testified he did not know that Lt. Johnson told the defendant to take the money.

This testimony of the City, to the effect that the defendant soon after entering the apartment took possession of much of the money on top of the table, is the one bit of evidence from which an inference may be drawn that he had custody and control of the other paraphernalia in the room; without it the trial judge would have been justified in sustaining the motion for a directed verdict at the conclusion of the whole case. With it in the record, in the light of its tenuous character and its uncertainty to support a conviction, in conjunction with the fact that the jury was under no restraint whatever in the consideration of defendant's former activities in number gaming, requires us to say that the evidence does not sustain the verdict.

Another part of the testimony upon which the City relies to support the verdict and judgment is a statement attributed to the defendant after his arrest and while the party was on the way to police headquarters. The language of this statement is variously given by the officers. Officer Sawyer, page 92 of the record:

"He (the defendant) made the statement more or less in the form of a question—'What are you going to do? Run us operators in town out of business and let the ones outside get rich?' "

Lt. Johnson at page 63 of the record testified to the same conversation:

"Mr. Treadwell asked me how come we were laying on all the people in Columbus—He asked why we were laying on the town folks and letting the out of town people get rich, and I told him that we was laying on all of them and not only one—there was no certain one. And he said, 'Well, the chain is just as strong as its weakest link'."

Officer Fulton also testified that when the defendant took the money he said "that man should have had his head examined for taking out the slips and leaving all that money there." Officer Sawyer gave a different version, testifying the defendant said that the man went out the back door with his paraphernalia, that he went out with other slips and that the man should have his head examined for taking out the slips and leaving all the money there. This observation could well have been made by any one who took cognizance of what had happened.

All of these statements and others of minor character might have been of some probative value as to guilty knowledge, if there had been some substantive proof that the defendant had control or custody of the gaming paraphernalia, or any proof from which such fact could logically be inferred. Without such basic proof, all of these statements are nothing more than suspicious circumstances and do not attain to that quality which will support a verdict which must be based upon proof beyond a reasonable doubt.

The defendant not only denies that he at any time rented the third floor of the building or any part thereof, that he had any possession or control of it but states that prior to the day of the search he had not been in the apartment which was searched and specifically denies any connection whatever by himself or through any other person with the articles seized. He testifies further that the apartment in which the property was found was, and for a year prior thereto had been, occupied by Clesta Mae Thomas whose name was found on the adding machine in the apartment. It may be that this explanation of the identity of the occupant would be unsatisfactory, if the obligation devolved upon the defendant to meet any presumption that he was in control of the room, but it must at all times be kept in mind that, it was not incumbent upon him to show who occupied the room, so long as the City had failed by its evidence to establish that he either, directly or indirectly, had control of it or of the property seized. In other words, the City must rely upon its testimony as to the essential, substantive and material facts constituting prima facie proof of the offense charged before the defendant is required to explain.

A careful and minute examination of the record in this case requires us to hold that there was insufficient testimony presented to the jury to support its verdict and that, as

rendered, it is manifestly against the weight of the evidence.

The judgment will be reversed and the cause remanded to the Municipal Court for new trial.

WISEMAN and MILLER, JJ., concur.