THE STATE OF OHIO, APPELLEE, *v.* LANCASTER, APPELLANT.

84

(No. 69-762—Decided February 17, 1971.)

*Mr. C. Howard Johnson*, prosecuting attorney, and *Mr. David H. Bodiker*, for appellee.
*Mr. David E. Tingley*, for appellant.

SCHNEIDER, J.   The basic question at the trial was the identity of the person who committed the crime.   The prosecuting witness, Raymond Sigler, a night attendant at a Columbus gas station, testified that at about 4:00 a. m. on September 3, 1965, he was robbed of $90 and shot in the back of the neck by a man he later identified as Thomas Eugene Lancaster.

Sigler stated that the accused drove into the service station in a dirty, small car.   After the car's tank was filled with gas, the driver of the car pulled a small caliber gun from his coat pocket, took Sigler's money, forced the victim into the station's restroom, told him to place his hands against the wall, and then shot him in the back of the neck.

Sigler lay conscious, but was unable to move or call for help, for about 45 minutes.   He was subsequently hos-

pitalized for approximately three months, spent an additional six months in a rest home, and has suffered some irreparable physical damage.

Sigler testified that the filling station had enough light for him to see the facial features and clothes of the gunman. For two years following the incident, Sigler looked at hundreds of photographs and several line-ups, but was unable to identify his assailant. Based upon consultation with Sigler, a police artist drew a picture of the gunman, which Sigler said was "a drawing of the man who shot me."

In September 1967, Sigler identified a picture shown him by the police as his assailant. Two weeks later both the accused and Sigler were taken by the police to the Licking County Court House in Newark where, after seeing Lancaster in the hallway, Sigler identified him as the gunman.

## I.

The first question of law is whether a prosecutor may converse with an accused without the presence of counsel, after indictment but before trial, and then use that information which was voluntarily given by the accused in an attempt to impeach the latter's testimony.

Several months before trial the appellant filed a notice of alibi, but at the trial he withdrew it. Later, on direct examination, the appellant testified that he could not remember where he was at the time of the crime. On cross-examination, the appellant denied making statements to the assistant county prosecutor the week before the trial to the effect that he remembered being in Newark playing cards on the morning of the shooting.

The appellant argues that prejudicial error occurred when the prosecutor cross-examined him about the withdrawn notice of alibi. We do not agree. The prosecutor attempted to cross-examine him regarding the alibi, but defense counsel promptly objected, the objection was sustained, and the jury was immediately instructed to disregard the question. A later attempt to introduce evidence of the alibi through testimony of a deputy clerk of

court met with another objection, which was also sustained.

On cross-examination and over objection, the prosecutor asked the appellant if he had played gin rummy in Newark on or about September 3, 1965. After receiving an affirmative answer to that question, the prosecutor then asked, over objection, if the appellant had told him the previous week that he specifically remembered playing gin rummy with one Barker the night of the crime. Lancaster replied, ''I don't recall, sir.'' In response to the next question, the appellant denied telling the prosecutor that he recalled that particular night because he had won and had been paid off with a chair in place of cash. We find no error in this series of questions.

The appellant insists further that the prosecutor should not have been allowed to take the witness stand and give testimony concerning the same conversation and alleged statements he received from Lancaster at a meeting in Michigan prior to the trial. The record shows that the prosecutor, defense counsel and Lancaster were to meet in Jackson, Michigan, to discuss the case. Defense counsel was three and one-half hours late for the meeting. Before his arrival, Lancaster and the prosecutor engaged in conversation, during which Lancaster made the disputed statements.

No objection, however, was made to this testimony. Moreover, the defense had earlier attempted to call the prosecutor as its own witness.

Appellant's first objection to the prosecutor's testimony was made to the Court of Appeals. This was too late.

In the case of *State* v. *Childs* (1968), 14 Ohio St. 2d 56, 236 N. E. 2d 545, certiorari denied, 394 U. S. 1002, we stated, in paragraph three of the syllabus:

''It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. (Paragraph one of the syllabus of *State* v. *Glaros*,

170 Ohio St. 471 [166 N. E. 2d 379], approved and followed.)'' Accord, *State* v. *Johnson* (1968), 14 Ohio St. 2d 67, 236 N. E. 2d 552.

We also re-assert the doctrine we stated at page 62 of the *Childs' case*: ''Constitutional rights may be lost as finally as any others by a failure to assert them at the proper time. *State* v. *Davis* (1964), 1 Ohio St. 2d 28 [203 N. E. 2d 357].'' The interest of the state in the requirement of timely objection to improper evidence has been recognized in several United States Supreme Court decisions. Compare *Douglas* v. *Alabama* (1965), 380 U. S. 415; *Henry* v. *Mississippi* (1965), 379 U. S. 443.

Aside from the problem of waiver, the question remains as to whether there was a violation of the appellant's constitutional rights. In his attempt to show error, the appellant relies heavily upon the case of *Massiah* v. *United States* (1964), 377 U. S. 201, wherein an investigator was enabled to overhear a defendant's damaging statements by the use of a secretly installed radio transmitter.

Here, there is no evidence that the information obtained was ''incriminating statements thus deliberately elicited,'' as in *Massiah*, but rather ''various voluntary statements'' made by Lancaster to the prosecutor, none of which were incriminating as to the appellant's guilt.

In *State* v. *Butler* (1969), 19 Ohio St. 2d 55, at page 62, we held that ''. . . voluntary statements of an accused made to police without cautionary warnings are admissible on the issue of credibility after defendant has been sworn and testified in his own defense.'' Accord, *People* v. *Kulis* (1966), 18 N. Y. 2d 318, 221 N. E. 2d 541; *United States, ex rel. Kulis,* v. *Mancusi* (W. D. N. Y. 1967), 272 F. Supp. 261, affirmed, 383 F. 2d 405, certiorari denied, 389 U. S. 943.

The doctrine pronounced in *Walder* v. *United States* (1954), 347 U. S. 62, and followed in *Tate* v. *United States* (C. A. D. C. 1960), 283 F. 2d 377, approved the introduction of evidence wrongfully obtained for impeachment purposes only, even though the same evidence would be inadmissible to prove the case directly under *Miranda* v. *Arizona* (1966),

384 U. S. 436. We approve and follow that rule, as restated in paragraph two of the syllabus of *State* v. *Butler, supra* (19 Ohio St. 2d 55), as follows:

"The protection against compulsory self-incrimination does not operate to exclude the prosecution's use of voluntary statements of an accused, made to police without *Miranda* warnings, for the purpose only of impeaching his credibility on cross-examination."

*Butler* observed that the statements in *Miranda* concerning the inadmissibility for impeachment purposes of statements made by defendant without being advised of his constitutional rights (384 U. S. at 477) were *obiter dictum.* All four cases reversed by *Miranda* were cases involving direct evidence of guilt used in the case in chief. It has long been the rule that expressions in a case which go beyond the facts of that case do "not . . . control the judgment in a subsequent suit when the very point is presented for decision." *Cohens* v. *Virginia* (1821), 19 U. S. (6 Wheat.) 264, 399.

Statements which an accused, in total freedom, chooses to volunteer to a prosecutor without prior cautionary warnings, are admissible on the issue of credibility after the accused has been sworn and testified in his own defense.

Here, the appellant does not claim that the prosecutor actually questioned him, nor does the appellant allege any efforts indirectly to elicit statements. The statements were volunteered and should be accepted as such.

Moreover, appellant has waived any complaint he may have had by not making timely objection at the trial, and, further, the testimony to which objection was not waived was properly admissible because it reflected on the credibility, not the guilt or innocence, of the appellant.

## II.

The next question of law is whether a prosecutor may elicit testimony from a rebuttal witness implicating the appellant in a crime or crimes other than that for which the appellant is being tried, and of which the appellant had not been convicted.

A search of the record reveals that at no point during

the direct or redirect examination of the disputed rebuttal witness (a convicted felon now in prison, one Greene) was there any statement that the appellant had committed a crime other than the one for which he was being tried.[1] The testimony of Greene on direct examination was that he had stolen and then sold Lancaster adding machines, calculators, and cameras. It was only on *cross- and recross-examination* by appellant's counsel that Greene made any statements that he and the appellant had participated together in thefts. At no point in Greene's testimony was there any elaboration on these thefts.[2] Thus, it was not

---

[1]The closest that the direct examination of Greene comes to an allusion to other crimes which may have been committed by the appellant is as follows:

"Q. Did you ever sell him [Lancaster] adding machines and calculators and cameras and things like that?

"A. I sold him my share of it, yea.

"Q. What do you mean your share?

"Mr. Wolery [defense counsel]: We'll object, your honor.

"The Court: Overruled.

"(By Mr. Bodiker [prosecutor]) How much did you get for them, your share?

"A. I don't know altogether. It was just depended on how much we had at the time.

". . .

"Q. Did he always pay you by check? [In reference to Greene's share of the adding machines, calculators, and cameras.]

"A. No, sometimes he paid by cash.

"Q. Did he tell you why he paid you by check?

"Mr. Wolery: We'll object.

"The Court: Overruled.

"(By Mr. Bodiker) You may answer.

"A. To protect himself.

"Q. In what way?

"A. If I ever got caught, like I did, and copped out on him, like I'm doing, then he's protected."

[2]The following were the only allusions made by Greene on cross- and recross-examination regarding other crimes which may have been committed by the appellant:

"Q. Now, did you give or did you produce any adding machines and this type of thing in the presence of one Lancaster? Did you bring any adding machines or anything around?

"A. They were already there. We stole them together."

On recross-examination:

the prosecution but the *defense counsel* who elicited the objectionable statements from Greene.

No error occurs to the accused where statements implicating the accused in a crime other than the one for which he is being tried are elicited by *defense counsel*, on cross- and recross-examination of a rebuttal witness.

*Columbus* v. *Treadwell* (1946), 46 Ohio Law Abs. 367, 65 N. E. 2d 720; *Wagner* v. *State* (1926), 115 Ohio St. 136, 152 N. E. 28, which the appellant cites in his brief, do not support his argument, because those cases involve the testimony of the defendant on cross-examination by the prosecutor, and are, therefore, distinguishable.

Testimony by Greene relating to Lancaster's ownership of guns, however, is relevant in view of the nature of the charge, *i. e.*, armed robbery and shooting with the intent to kill. Information concerning Lancaster's access to or ownership of weapons, especially hand guns, is relevant to proof of his identity as the assailant, and to impeach his credibility for truth and veracity, because he had denied any ownership or possession of guns in and around the time of the shooting.

The first degree murder case of *Mosley* v. *State* (1934), 48 Ohio App. 554, 194 N. E. 613, held that testimony to the effect that certain witnesses "had seen the accused with a revolver a few days before the crime was committed is admissible in view of the fact that the accused had taken the stand and testified that he never owned or possessed a revolver."

The case at bar presents a similar situation, and we approve and follow the rule that where a shooting is committed with a revolver, testimony by a rebuttal witness as to the accused's access to or ownership of revolvers in and around the time of the shooting is admissible after

---

"Q. I believe you also stated that you had a brother, Kenny, or somebody to go with you when you threw the gun away?

"A. Yes, sir.

"Q. Isn't it a fact that that gun belonged to Eugene Gienger or Gienger?

"A. I don't know who it belonged to because we stole it."

the accused has testified that he never owned or possessed a revolver at the time of the alleged crime.

### III.

The final question of law is whether the prosecution may introduce the following evidence: (1) a "composite" drawing of the alleged assailant sketched by a police artist; (2) a poster reproduction of that drawing; (3) a "mug shot" of the appellant taken after his arrest; and (4) the testimony of police officers as to the fact that the prosecuting witness had described his assailant to them, that said witness had been shown photographs and attended line-ups, and that the witness had made both photographic and personal identification of the appellant.

This evidence is specifically authorized by R. C. 2945.55, which reads:

"When identification of the defendant is an issue, a witness who has on previous occasion identified such person may testify to such previous identification. *Such identification may be proved by other witnesses.*" (Emphasis supplied.)

An annotation in American Law Reports states that, "... the rule now prevailing in most jurisdictions in which the question has been fully considered . . . is that the prior identification may be shown by the testimony of the identifier or identifying witness, or by the testimony of the third person to whom or in whose presence the identification was made, where the identifier has testified or is present and available for cross-examination at the trial, not as original, independent, or substantive proof of the identity of the defendant as the guilty party, but in corroboration of the testimony of the identifying witness, at the trial as to the identity of the defendant. . . ." Annotation, *Extrajudicial Identification*, 71 A. L. R. 2d 449, at 453. Cf. *People* v. *Gould* (1960), 54 Cal. 2d 621, 354 P. 2d 865; *People* v. *Ford* (1959), 175 Cal. App. 2d 109, 345 P. 2d 573; *People* v. *James* (1963), 218 Cal. App. 2d 166, 32 Cal. Rept. 283. See 29 American Jurisprudence 2d 422, *Evidence*, Section 373.

Regarding the pictures of the accused, evidence of

extra-judicial identification from photographs is competent and admissible to corroborate the testimony of the witness who identified the accused at trial, and the means and manner in which the extra-judicial identification was made relate only to the weight and sufficiency of the evidence rather than admissibility. *State* v. *Childs* (1967), 198 Kan. 4, 422 P. 2d 898. Compare, *Judy* v. *State* (1958), 218 Md. 168, 146 A. 2d 29, and *State* v. *Childers* (Mo. 1958), 313 S. W. 2d 728. See 71 A. L. R. 2d 455; 29 American Jurisprudence 2d 416, 868, 869, *Evidence*, Sections 367 and 791. Cf. *State* v. *McKinney* (1945), 77 Ohio App. 309, 64 N. E. 2d 129.

The disputed evidence was not used to make the actual identification of the appellant, in as much as that had already been established by Sigler, the victim, but merely to aid the jury in its evaluation of that witness's in-court identification. Therefore, all this evidence is admissible solely for the purpose of indicating the process by which the accused was identified, where said process is under attack, and to corroborate that identification.

The appellant relies heavily upon cases with different fact situations which are readily distinguishable, and do not serve as authority to govern the present situation. See *Rose* v. *State* (1896), 13 C. C. 342, affirmed without opinion, 56 Ohio St. 779; *Dunn* v. *State* (1887), 45 Ohio St. 249, 12 N. E. 826; *Griffith* v. *Commonwealth* (1933), 250 Ky. 506, 63 S. W. 2d 594, overruled in part in *Colbert* v. *Commonwealth* (Ky. 1957), 306 S. W. 2d 828.

All three questions of law are decided in favor of the appellee. Therefore, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, DUNCAN, STERN and HUNSICKER, JJ., concur.

CORRIGAN, J., concurs in the judgment of affirmance only.

HUNSICKER, J., of the Ninth District Court of Appeals, retired, sitting for LEACH, J.

CORRIGAN, J., concurring in judgment of affirmance. Paragraphs four and five of the syllabus herein relate to evidence concerning the identification of the defendant by the victim prior to the trial. Such evidence was properly admitted by the trial court, not as original, independent or substantive proof of the identity of the robber, but as corroboration of the testimony of the victim as to the identification of the robber.