OPINION *Page 2 
{¶ 1} Defendant-Appellant Lee Alderson ("Alderson") appeals from the August 23, 2007 Judgment and Sentence of the Court of Common Pleas, Union County, Ohio, finding him guilty of one count of Illegal Possession of a Firearm in a Liquor Permit Premise in violation of R.C. 2923.121, a felony of the fifth degree, and one count of Carrying a Concealed Weapon in violation of R.C. 2923.12(A)(2) (G)(1), a felony of the third degree. The Carrying a Concealed Weapon charge also contained the specification that the offense was committed in a premise which maintained a Class D Liquor Permit. Alderson was sentenced to eleven months in prison for Illegal Possession of a Firearm in a Liquor Permit Premise and two years in prison for Carrying a Concealed Weapon. The trial court further ordered Alderson's sentences to run consecutively.
 {¶ 2} This matter stems from events occurring on April 2, 2007, at Stephen's Lounge. It appears that Danny Snyder ("Snyder") was at a bar called The Locker Room at approximately 4:00 p.m. on April 2, 2007, when he began speaking to Ricia Hay ("Hay"). After speaking with Hay, Snyder left The Locker Room and went across the street to Stephen's Lounge at approximately 5:00 p.m.
 {¶ 3} Once Hay followed Snyder to Stephen's Lounge, she asked to use his phone, which was in his truck. Snyder accompanied Hay to his truck, parked behind Stephen's Lounge, so that Hay could use his phone. While Snyder and *Page 3 
Hay were sitting in his truck, Alderson approached them and leaned inside the truck to speak to Hay. Alderson then punched Snyder, who subsequently hit Alderson.
 {¶ 4} Snyder then drove away, with Hay still in the car. Hay needed to go back into The Locker Room to retrieve her purse, so Snyder waited outside so that he could drive her home. After waiting approximately a half hour, Hay did not reappear, so Snyder parked his truck and returned to Stephen's Lounge. Alderson then came into Stephen's Lounge to address Snyder and ask who Hay had called on his phone. Snyder showed Alderson the number Hay had called.
 {¶ 5} It appeared that after viewing the number Hay dialed on Snyder's phone, Alderson was going to leave Stephen's Lounge. However, as he was walking to the door, he pulled out a gun, held it to Snyder's head, and cocked it, telling him that if he ever spoke to Hay again, he would kill him.
 {¶ 6} Alderson was indicted on April 16, 2007 on one count of Illegal Possession of a Firearm in a Liquor Permit Premise in violation of R.C. 2923.121, a felony of the fifth degree, and one count of Carrying a Concealed Weapon in violation of R.C. 2923.12(A)(2) (G)(1), a felony of the third degree, including the specification that the violation was committed at a premise for which a D permit had been issued. *Page 4 
 {¶ 7} A jury trial was held from July 24-25, 2007. On July 25, 2007 the jury returned a verdict finding Alderson guilty on both counts of the indictment. Alderson was sentenced to eleven months in prison for Illegal Possession of a Firearm in a Liquor Permit Premise and two years in prison for Carrying a Concealed Weapon. The trial court further ordered Alderson's sentences to run consecutively.
 {¶ 8} Alderson now appeals, asserting a single assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED WHEN IT ADMITTED A PHOTOGRAPH, TAKEN BY AN UNKNOWN SOURCE, PURPORTING TO BE A CLASS D LIQUOR PERMIT.
 {¶ 9} In his first assignment of error, Alderson argues that the trial court erred in allowing the admission of a photograph of the Class D Liquor Permit possessed by Stephen's Lounge. Specifically, Alderson argues that the trial court erred by allowing the State to introduce photographs of the Liquor Permit which hangs in Stephen's Lounge, because this evidence violates the "best evidence rule" and Ohio Evid. R. 1005. It also appears that Alderson is arguing that, because the photographic evidence was inadmissible, the trial court erred in overruling his Crim. R. 29 motion for acquittal.
 {¶ 10} The admissibility of evidence is within the sound discretion of the trial court. Absent a showing of an abuse of discretion, the decision of the trial court will not be reversed. State v. Yohey (March 18, 1996), 3rd Dist. No. 9-95-46, *Page 5 
citing State v. Graham (1979), 58 Ohio St.2d 350, 390 N.E.2d 805 andState v. Lundy (1987), 41 Ohio App.3d 163, 535 N.E.2d 664. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 11} As an initial matter, we note that Alderson's assignment of error was not properly preserved for review. At the time of the introduction of the photographs in question, Alderson's counsel objected as follows:
 Q: And is that a true and accurate photograph of the liquor license posted at the bar.
 Mr. Ratliff: We would again object, Your Honor.
 The Court: Overruled.
 Mr. Ratliff: Also basis on the authentication. She can't authenticate that document, Your Honor. It doesn't, it — it's not a self authenticating document.
 The Court: You mean it's not certified by the Department of Liquor Control?
 Mr. Ratliff: Yes.
 The Court: Is that the one that's behind the bar where you work?
 Witness: Yes.
 The Court: Overruled.
(Tr.p. Vol. 1 pgs. 85-86) *Page 6 
 {¶ 12} We note, however, that these objections went only to the fact that the photograph of the Class D Liquor Permit possessed by Stephen's Lounge was not certified by the Department of Liquor Control. However, Alderson's objections at trial do not cite to Evid. R. 1005, nor does Alderson make any mention of a "best evidence rule." Instead, the objection appears to deal only with the lack of an officially certified copy of the Liquor Permit. These objections do not question the authenticity of those photographs, the validity of the Liquor Permit possessed by Stephen's Lounge, nor does this objection indicate that Alderson questioned the accuracy of what was depicted in the photographs.
 {¶ 13} In State v. Williams (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364
(overruled on other grounds), the Ohio Supreme Court held that
 [t]his court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Gordon (1971) 28 Ohio St.2d 45, 276 N.E.2d 243; State v. Lancaster (1971), 25 Ohio St.2d 83, 267 N.E.2d 291; State v. Davis (1964), 1 Ohio St.2d 28, 203 N.E.2d 357; State v. Glaros (1960), 170 Ohio St. 471, 166 N.E.2d 379. "Any other rule," this court stated in State v. Driscoll (1922), 106 Ohio St. 33, at 39, 138 N.E. 376 at 378, "would relieve counsel from any duty or responsibility to the court and place the entire responsibility upon the trial court to give faultless instructions upon every possible feature of the case, thereby disregarding entirely the true relation of court and counsel which enjoins upon counsel the duty to exercise diligence and to aid the court rather than by silence mislead the court into commission of error." See Crim. R. 30. *Page 7 
Williams, 51 Ohio St.2d at 117.
 {¶ 14} Accordingly, this Court is not required to consider Alderson's specific assignment of error, as it was not properly raised before the trial court. However, in the interest of justice, we will address the issue raised in Alderson's brief regarding the elements of these offenses.
 {¶ 15} Turning first to the standard of review for Alderson's Crim. R. 29 motion for acquittal, Crim. R. 29(A) provides:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.
 {¶ 16} A trial court should not grant a Crim. R. 29 motion for acquittal if "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt * * *." State v. Bridgeman (1978), 55 Ohio St.2d 261,263, 381 N.E.2d 184. However, this Court has previously held that theBridgeman standard "must be viewed in light of the sufficiency of evidence test put forth in State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus." State v. Foster (Sept. 17, 1997), Seneca App. No. 13-97-09. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact *Page 8 
could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d 259 at paragraph two of the syllabus.
 {¶ 17} With respect to the viability of Alderson's contention that the trial court erred in overruling his Crim. R. 29 motion, we note that the transcript provided to this Court does not provide sufficient information on which to base a ruling on Alderson's motion. At the close of the State's case, the transcript provides as follows:
 Mr. Ratliff: We'll make a Rule 29 (inaudible).
 The Court: Rule 29? On what basis?
 Mr. Ratliff: (Inaudible).
 The Court: Okay. I'll overrule the objection.
(Tr.p. Vol. 1, pg. 186).
 {¶ 18} Such transcription makes it extremely difficult for this court to ascertain, at points, exactly what was said by the parties as well as the court's reasoning for overruling and/or sustaining the parties' objections. Furthermore, we note that it is the appellant's duty to present this court with a fair and accurate record of the trial court proceedings giving rise to the present appeal. See, generally, App. R. 9. Moreover, it is not only Alderson's initial Crim. R. 29 motion which is not adequately reflected in the transcript. When Alderson renewed his *Page 9 
motion at the close of the case, significant portions of his motion and the State's argument were inaudible.
 Mr. Ratliff: At this time I'd make a motion (inaudible) on two grounds (inaudible) beyond a reasonable doubt (inaudible). And number two (inaudible) to prove (inaudible) establishment (inaudible) we believe the document is not self-authenticating (inaudible). Therefore, he's not proven, that (inaudible).
 Mr. Phillips: Your Honor, the bartender did testify that the premises (inaudible) or on the premises (inaudible) license which is true and accurate copy of the license which is posted there. And there's no insufficient evidence to believe (inaudible) liquor establishment. As far as the overall (inaudible), your Honor, defense counsel misstates (inaudible) inference in our favor (inaudible) jury to decide. (Inaudible).
 The Court: Anything further?
 Mr. Ratliff: (Inaudible).
 The Court: Overruled.
(Tr.p. Vol. 2, pg. 31). Without clearer transcription this Court is unable to ascertain the exact basis and support of the motion it is being asked to consider.
 {¶ 19} Nevertheless, regarding the proof of the liquor license at trial, the State introduced the testimony of Judith Bowland ("Bowland"), a bartender of seventeen years at Stephen's Lounge. Bowland testified, using a diagram on file with the Division of Liquor Control, to the layout of the bar, indicating where on the premise alcohol was served. (Tr.p. Vol. 1 Pg. 83). With respect to the Liquor Permit, Bowland testified as follows: *Page 10 
 Q. Ma'am, does this establishment the [sic] have a permit?
 A. Yes, it does.
 Mr. Ratliff: Your Honor, we're going to object.
 The Court: Grounds?
 Mr. Ratliff: She's a bartender. She's not the owner, she's not the liquor commission.
 The Court: Overruled.
 Q. Ma'am, is that permit posted in the bar?
 A. Yes, it is.
 Mr. Ratliff: We would have a continuing objection, Your Honor.
 The Court: All right.
 Q. Show you what's been marked for identification purposes as State's Exhibit 2. And can you tell us what that is, please?
 A. That's the liquor license.
 Q. And is that — and it's posted in the bar?
 A. Yes, it is.
 Q. Where's it posted?
 A. It's posted behind the bar back in here on the wall.
 Q. And is that a true and accurate photograph of the liquor license posted at the bar.
 Mr. Ratliff: We would again object, Your Honor. *Page 11 
 The Court: Overruled.
 Mr. Ratliff: Also basis on authentication. She's can't authenticate that document, Your Honor. It doesn't, it — it's not a self-authenticating document.
 The Court: You mean it's not certified by the Department of Liquor Control?
 Mr. Ratliff: Yes.
 The Court: Is that the one that's behind the bar where you work?
 The witness: Yes.
 The Court: Overruled.
 Q. Ma'am, is that a true and accurate photograph of the liquor permit that's at the bar?
 A. Yes.
 Q. And there's a second page to that document, which is a close-up of that. Is that also true and accurate?
 A. Yes.
 Q. Ma'am, I can — thank you. This particular establishment does serve liquor and beer on premises; is that right?
 A. Yes.
 Q. And that is part of your job?
 A. Yes.
(Tr.p. Vol. 1 pgs. 84-86). *Page 12 
 {¶ 20} Nothing in the Ohio Rules of Evidence precludes the State from introducing testimony as to the existence of the Liquor Permit instead of introducing an actual copy of the permit. Moreover, once Bowland had testified that Stephen's Lounge possessed a valid Liquor Permit, Alderson was free to inquire as to the validity of the permit, as well as to whether the permit had been the subject of any licensure action.
 {¶ 21} It is settled law in Ohio that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value." State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492 (overruled on other grounds). See also State v. Mercado, 3rd Dist. No. 9-06-68, 2008-Ohio-3219. The testimony of Bowland that Stephen's Lounge served alcohol, and her testimony that a Class D Liquor Permit hung in the premises was evidence that Stephen's Lounge possessed such a permit. This evidence was never refuted at trial.
 {¶ 22} In State v. Capon (April 19, 1995), 9th Dist. No. 16892, the Ninth District Court of Appeals considered a similar factual scenario where a defendant was charged with violations of both R.C. 2923.121 and R.C. 2923.12. In Capan, the liquor permit itself was not introduced to prove that the establishment where the offenses took place possessed a liquor permit. Instead, testimony was introduced to establish that the bar sold "beer" and "drinks" at the time of the offenses. *Page 13 
 {¶ 23} Capan similarly argued that the trial court should have granted his Crim. R. 29 motion for acquittal. Id. The Ninth District Court of Appeals noted that the State presented no direct evidence that the bar in question held a liquor permit. However, they noted that the State did present circumstantial evidence in the form of testimony concerning the liquor permit and the serving of alcohol. The Capan Court concluded that
 [s]ince a D permit of some sort is required before an establishment may sell beer, and since the uncontested evidence was that beer was sold at James Dean's, a reasonable juror could have concluded that the D permit element had been proved beyond a reasonable doubt.
Capan, at *4. See also State v. Lee, 9th
Dist. 07CA009184, 2008-Ohio-343.
 {¶ 24} We agree with the rationale of the Capan court. To survive the Crim. R. 29 motion, the State needed only to introduce some evidence indicating the existence of the liquor permit. By introducing, as inCapan, that beer and drinks were served, and additionally, having Bowland identify pictures of the liquor permit as it was displayed in Stephen's Lounge, the State established a prima facie case as to this element.[1]
 {¶ 25} After Bowland testified, Alderson was free to impeach her testimony as to the existence of the liquor permit. With no certified copy of the permit in evidence, Alderson was free to call any witness he chose, to testify to that the *Page 14 
permit was somehow invalid. Alderson chose not to contest the validity of the permit. As a result, at the close of all the testimony, the only evidence in the record was that the requisite Class D Liquor Permit exists.
 {¶ 26} This Court cannot find that the trial court abused its discretion by allowing the introduction of the testimony of Judith Bowland or the photographs which accompanied her testimony. Moreover, we find that after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt Accordingly, Alderson's assignment of error is overruled.
 {¶ 27} Based on the foregoing, the August 23, 2007 Judgment Entry of Sentence of the Court of Common Pleas, Union County, Ohio is affirmed.
Judgment affirmed.
 PRESTON, J., concurs.
WILLAMOWSKI, J., concurs in judgment only.
[1] We note that the photographs of the permit, identified by Bowland as State's Exhibit 2, clearly show the license as a Class D Liquor Permit issued to Stephen's Lounge. *Page 1