JOURNAL ENTRY AND OPINION
The appellant, Richard Smith, appeals the decision of the trial court finding him guilty of one count of burglary and one count of theft, with an elderly specification. For the reasons set forth below, we affirm the decision of the trial court.
The events which underlie the appellant's conviction occurred on September 11, 2000. On that day, Albert Marn, the victim, had just returned from the bank where he had cashed his pension check. Upon returning to his home, he put the money in his bedroom dresser drawer along with other cash totaling around $750.
Mr. Marn then went about his day which included doing a load of laundry and taking the laundry outside to his backyard to hang on the line to dry. The victim testified that as he was hanging his laundry, two men approached him and asked if he needed any landscaping work done. After he declined their offer, the two men continued talking to Mr. Marn. At this same time it started to rain, and Mr. Marn quickly grabbed his clothes and proceeded into his second floor apartment. When he entered his apartment, Mr. Marn saw an individual coming from his living room/bedroom area. Mr. Marn and the individual were within two feet of each other when Mr. Marn asked the individual, "What are you doing up here?" The individual made a comment about looking for someone and then left the premises.
After the individual left the apartment, Mr. Marn noticed that his bedroom light was on. He went into his bedroom and found that all of the money he had placed in his dresser was gone. He called the police and reported the incident.
The next day, Detective Laurie Terrace met with Mr. Marn to have him look at photographs of possible suspects. Mr. Marn testified at the suppression hearing that he had been looking through the photo book, and when he reached the picture of Richard Smith, he was one hundred percent certain that Smith was the man that had been in his apartment.
At trial, the state offered the testimony of Detective Laurie Terrace. She testified about the victim's identification of Smith. She further testified about other incidents involving a man trying to rob elderly people in the same area where Mr. Marn lived. Detective Terrace testified that in the course of her investigation involving these other incidents, a vehicle belonging to Smith's wife had been spotted parked near Mr. Marn's house a week or two before his robbery incident. The witness had written down the vehicle's license plate number and, after learning what had happened to Mr. Marn, gave the information to the Detective.
The appellant testified that on the day in question, he was with his daughter and his father from noon until after 4:00 p.m. looking at cars for himself and his daughter. He further testified that he put $300 down on a used car for himself and then took his father for a haircut. He testified that he had nothing to do with the robbery of Mr. Marn and that he was with his family during the time of the robbery.
The appellant called his daughter as an alibi witness, and her testimony was similar to the appellant's. He also called the owner of the used car lot, who testified that he saw the appellant at his lot that afternoon, but he could not remember how long he was there.
At the close of the evidence, the trial court found Smith guilty on both counts of the indictment. He was sentenced to two years at the Lorain Correctional Institute on the charge of burglary and to twelve months on the charge of theft, with two hundred and five days credit.
The appellant now appeals the verdict and sentence of the trial court and asserts the following assignments of error:
 I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTION TO DISMISS WAS DENIED.
 II. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT EXPLAIN THE NATURE OF A JURY TRIAL PRIOR TO ACCEPTING A WAIVER OF A JURY TRIAL.
 III. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED THE MOTION TO SUPPRESS THE PHOTOGRAPHIC IDENTIFICATION.
 IV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THERE WAS NO IN-COURT IDENTIFICATION OF DEFENDANT AS THE ALLEGED PERPETRATOR.
 V. DEFENDANT WAS DENIED A FAIR TRIAL BY REASON OF THE INTRODUCTION OF ALL SORTS OF INFORMATION CONCERNING OTHER INVESTIGATIONS AND OTHER EXTRANEOUS EVIDENCE.
 VI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION FOR JUDGMENT OF ACQUITTAL.
In appellant's first assignment of error, he contends that the trial court erred when it denied his motion to dismiss the case for a speedy trial violation.
The appellant contends that he was arrested on September 15, 2000 and remained in jail until December 27, 2000 when he filed his pro se motion to dismiss the case for a violation of his speedy trial rights.
R.C. 2945.71, the Ohio speedy trial statute, provides in part:
 (C) A person against whom a charge of felony is pending:
* * *
 (2) Shall be brought to trial within two hundred seventy days after his arrest.
* * *
 (E) For purposes of computing time under division (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days.
 This does not apply for purposes of computing time under division (C)(1) of this section.
When dealing with the issue of valid holder on an inmate and the resulting effect on an individual's speedy trial rights, this court stated in State v. Mann (1993), 93 Ohio App.3d 301, 313:
 The existence of a valid parole holder prevents application of the triple-count provisions of R.C. 2945.71(E). State v. Brown (1992), 64 Ohio St.3d 476, 479, 597 N.E.2d 97, 99; State v. Cook (1992), 65 Ohio St.3d 516, 518, 605 N.E.2d 70, 76; see, also, State v. Martin (1978), 56 Ohio St.2d 207, 10 Ohio Op.3d 369, 383 N.E.2d 585. R.C. 2945.71(E) is applicable only to those defendants held in jail in lieu of bail solely on the pending charge. Martin, supra, citing State v. MacDonald (1976), 48 Ohio St.2d 66, 2 Ohio Op.3d 219, 357 N.E.2d 40. A parole violation is a separate offense and does not relate to the pending charge as contemplated by R.C. 2945.71(E). Id.
 Thus, the triple-count provision of R.C. 2945.71(E) is inapplicable to a defendant held in jail under a parole holder, even when there are additional criminal charges pending. * * *" State v. Dunkins
(1983), 10 Ohio App.3d 72, 74-75, 10 Ohio B.Rep. 82, 85, 460 N.E.2d 688, 692. See also, State v. Martin (1978), 56 Ohio St.2d 207, 211, 10 Ohio Op.3d 369, 371, 383 N.E.2d 585, 587. State v. Brown, 64 Ohio St.3d at 479, 597 N.E.2d at 99.
Upon a review of the trial court record, we must reach the conclusion that there is sufficient evidence in the record for this court to conclude that there was a valid holder on the appellant that would toll any speedy trial violation.
The criminal docket states only that on February 14, 2001, the defendant's pro se motion to dismiss was denied. The trial court did not conduct a hearing on the appellant's motion, and the state never filed a brief in opposition to the appellant's claims. Thus this court is left to review the materials contained in the record. Evidence of a holder is found in the case information form which was filled out by the arresting officer and states that the appellant was a parole violator and that a holder had been placed on him for that reason. Because the record contains evidence of a holder, the appellant's claim that his jail time should be calculated on a three-to-one formula is incorrect. Since the appellant had a holder placed on him, the proper calculation for jail time is a one-to-one formula. The state has two hundred and seventy days to bring the appellant to trial, and in this case, the appellant had two hundred and five days jail credit at the time of sentencing; therefore, his speedy trial time had not been violated. Appellant's first assignment of error is without merit.
In appellant's second assignment of error, he contends that the trial court failed to properly inform him of the nature of a jury trial; therefore, the signed jury waiver was not made knowingly, intelligently and voluntary.
R.C. 2945.05 which provides for a defendant's waiver of his right to trial by jury, provides:
 In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I, * * *, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a judge of the Court in which the said cause may be pending. I fully understand that under the laws of the state, I have a constitutional right to a trial by jury.
 Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.
In order for a jury waiver to be valid, it must be made voluntarily, knowingly, and intelligently. State v. Bays (1999), 87 Ohio St.3d 15,19. A written waiver of a jury trial is presumed to be voluntary, knowing, and intelligent unless the defendant can show otherwise. "Waiver may not be presumed from a silent record; however, if the record shows a jury waiver, the verdict will not be set aside except on a plain showing that the waiver was not freely and intelligently made." Id. citing Adamsv. United States ex rel. McCann (1942), 317 U.S. 269, 281. Since the record in the instant case shows that the appellant executed a jury waiver in compliance with the revised code, the appellant has the burden to make a showing that the waiver was not freely and intelligently made.
The transcript states in pertinent part:
 The Court: * * * the court has before it a defendant's voluntary waiver of jury trial. Mr. Smith, did you sign this? Is this your signature?
The Defendant: Yes I did.
 The Court: And your attorney explained to you that you have a constitutional right to a trial before a jury of your peers?
The Defendant: Yes
 The Court: By signing this form, you're waiving a jury saying you don't want a jury. You want the Court to decide this case; is that correct?
The Defendant: Yes
 The Court: All right. Then the Court accepts and enters a jury waiver.
The Ohio Supreme Court has found in State v. Jells (1990),53 Ohio St.3d 22, that "there is no requirement in Ohio for the trial court to interrogate a defendant in order to determine whether he or she is fully apprized of the right to a jury trial. The criminal rules and the revised code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court after arraignment and opportunity to consult with counsel. Id. at 26; see also State v.Morris (1982), 8 Ohio App.3d 12, 14, 8 OBR 13, 15-16, 455 N.E.2d 1352,1355. While it may be better practice for the trial judge to enumerate all the possible implications of a waiver of a jury, there is no error in failing to do so." Id.
Based on the properly signed voluntary waiver of jury trial and the appellant's comments made before the trial judge, we find that the appellant has not made any type of showing to suggest that the waiver was not intelligently or freely made. Appellant's second assignment of error is therefore without merit.
Appellant's third assignment of error contends the trial court erred in denying his motion to suppress the photographic identification of the appellant by the victim. The appellant maintains that he and two of his associates were placed in the photo array and shown to the victim. In addition, the only description given to the detective by the victim was that the person was a middle-aged, black male, heavy set, with short hair.
When the confrontation procedure used by the police, in this case a photo array, is alleged to be suggestive, this court must determine if, under the totality of the circumstances, the identification is reliable. To that end, this court is guided by the United States Supreme Court and their decision in Neil v. Biggers (1972), 409 U.S. 188, in which five factors were identified that affect the reliability of the identification by the witness and its subsequent admissibility. The five factors are "* * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199. Before balancing the five factors, the appellant must prove that the identification procedure used was unnecessarily and impermissibly suggestive.
The testimony of Detective Laurie Terrace showed that, at the time of the photograph array, the appellant was already a suspect in several other burglaries and that his wife's car had been seen prior to Mr. Marn's burglary a couple of houses down from the victim's house. Detective Terrace made up a photo array with photographs of people that looked similar to the appellant plus two of the appellant's known associates. The photographs in the array contained similar hair styles and facial growth with some exceptions.
The victim testified that Detective Terrace brought him a whole package of photographs the day after the burglary. Each page contained three or four photos in a row and up and down. The victim testified that he was looking through the book and had made it to the third page when he recognized the photograph of the individual he had seen in his house. The victim further testified that the certainty of his identification of the appellant was based on the fact that he had been only a foot to two feet from the appellant when he confronted him near his kitchen.
In viewing the two-prong test and the five factors listed in Neil, we can only find that the pretrial identification was not so suggestive as to give rise to a substantial likelihood of irreparable misidentification. All identification procedures can be viewed as somewhat suggestive. Even without communication from a police officer, a witness/victim could assume that one of the photographs in the array might be someone whom the officer believes is the perpetrator of the crime. The purpose of a photo array would be lost if the suspected perpetrator was not in the array. To that extent, the array, by its nature, can be found to be somewhat suggestive, but not so suggestive as to give rise to a substantial likelihood of irreparable misidentification. Appellant's third assignment of error is therefore without merit.
In appellant's fourth assignment of error, he argues that he was denied his due process of law when there was no in-court identification of him as the alleged perpetrator.
R.C. 2945.55 provides:
 When identification of the defendant is an issue, a witness who has on previous occasion identified such person may testify to such previous identification. Such identification may be proved by other witnesses.
In reviewing the language and use of R.C. 2945.55 regarding a prior photographic identification, the Ohio Supreme Court, in State v.Lancaster (1971), 25 Ohio St.2d 83, held that R.C. 2945.55 authorizes testimony concerning a prior identification and further held in its syllabus:
 5. Prior identification of the accused may be shown by the testimony of the identifier, or by the testimony of a third person to whom or in whose presence the identification was made, where the identifier has testified and is available for cross-examination, not as original, independent or substantive proof of the identity of the accused as the guilty party, but as corroboration of the testimony of the identifying witness as to the identity of the accused.
In the case herein, the testimony of Detective Terrace was offered to establish that the victim picked out the appellant from a number of photographs that the Detective brought to his house the day after the robbery. In this case, the victim did testify and described the incident and the subsequent photo line-up. He testified as to what happened on the day in question, how he found the appellant in his home, and then how he picked him from the photo display made by Detective Terrace. Appellant's counsel had the opportunity to cross-examine the victim as to his identification of the appellant and did. The victim of the crime is not forced to make an in-court identification when there has already been a proper identification made within days of the incident. Therefore, appellant's fourth assignment of error is without merit.
Appellant's fifth assignment of error asserts that the trial court failed to grant his motion for judgment of acquittal. In this case, the appellant contends that in the absence of an in-court identification, the state failed to demonstrate that the appellant was the perpetrator of the crimes charged.
In reviewing the trial court's denial of a judgment of acquittal, Rule 29 of the Ohio Rules of Criminal Procedure, this court must examine the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt. See State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
Pursuant to our determination of the appellant's fourth assignment of error, we find that the state provided sufficient evidence that would prove beyond a reasonable doubt that the appellant was, in fact, the perpetrator of the crime charged. The evidence presented by the state showed that the appellant was found in the victim's house by the victim himself who picked the appellant out of a photo line-up, as testified to by Detective Terrace, and that after the appellant left the victim's house, he realized that someone had robbed him of almost eight hundred dollars. Therefore, the trial court did not err in denying the appellant's motion for acquittal. Appellant's fifth assignment of error is not well taken.
Judgement affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., CONCURS. PATRICIA A. BLACKMON, J., CONCURS INJUDGMENT ONLY.