[Cite as *State v. Scott*, 2024-Ohio-975.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 112325 |
| v. | : | |
| DAMARION SCOTT, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** March 14, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-659174-B

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Damarion Scott ("Scott") appeals his convictions for aggravated murder and other charges. For the following reasons, we affirm in part, reverse in part, and remand.

**Factual and Procedural History**

{¶ 2} On February 16, 2021, Scott, along with Javon Chandler ("Chandler"), was charged in the Cuyahoga County Common Pleas Court, Juvenile Division ("juvenile court"), in the death of Angel Heredia with aggravated murder (Count 1); murder (Count 2); aggravated robbery (Count 3); felonious assault (Count 4) and having weapons while under disability (Count 5). Counts 1-4 included one- and three-year firearm specifications. As Scott was 16 years old at the time of the offenses and due to the nature of the charges, the state filed for a mandatory bindover to the general division of the Cuyahoga County Common Pleas Court.

{¶ 3} The juvenile court held a hearing on the state's motion on April 22, 2021. After hearing testimony from the state's witnesses and reviewing the state's exhibits, the juvenile court found that there was probable cause that both Scott and Chandler committed the crimes outlined in the complaint, that the crimes would be felonies if committed by an adult, and the nature of the crimes qualified for transfer to the general division.

{¶ 4} On May 4, 2021, Scott was indicted for aggravated murder, an unclassified felony (Count 1); murder, an unclassified felony (Count 2); involuntary manslaughter, a felony of the first degree (Count 3); two counts of aggravated robbery, felonies of the first degree (Counts 4 and 5); two counts of felonious assault, felonies of the second degree (Counts 6 and 7); robbery, a felony of the second degree (Count 8); and having weapons while under disability, a felony of the third degree

(Count 10).[1]  Counts 1 through 8 each included one- and three-year firearm specifications.

{¶ 5} Scott elected to take the charges to a trial by jury, which commenced on November 14, 2022.[2]  Scott initially elected to have Counts 3 and 10 tried to the bench because they each contained references to prior juvenile adjudications. However, midtrial, Scott, against the advice of counsel, elected to have those counts heard by the jury.

{¶ 6} At the trial, the testimony and evidence established that Mr. Heredia was shot and killed during an attempted carjacking at the Gas USA Station located at 6501 Denison Avenue, Cleveland, Ohio.  The incident was captured on the business's surveillance videos.  The videos showed two African-American males in a black Audi pull up to a pump at the station around 2:30 p.m., on February 10, 2021. Both males exited the vehicle; however, neither attempted to pump gas.  They stood outside for several minutes before entering the store.  Both were wearing face masks hiding part of their noses and all of their lower faces, so there was not a full view of their faces on the surveillance video.  The two had a brief conversation with staff about ordering food and then exited the store.  Shortly thereafter, Mr. Heredia drove into the station and parked along the side of the building.  Once he entered the store,

---

[1] Count 9 charged Chandler with having weapons while under disability.

[2] Chandler pleaded guilty to Count 1 aggravated murder with the three-year firearm specification and was sentenced to a term of prison for life with parole eligibility after 23 years.

the two males got into the Audi and drove the car to the side of the building near Mr. Heredia's parked car.

{¶ 7} After Mr. Heredia exited the store and entered his car, the suspects exited the Audi with guns in their hands and approached Mr. Heredia's car. One opened the driver's side door, while the other opened the passenger side door. The two confronted Mr. Heredia at gun point and then one of the males shot Mr. Heredia six times in the face and upper torso. The two males then ran back to the Audi and fled the scene.

{¶ 8} Gas USA employee Brittany Dinickle saw the two males when they parked and noticed that they did not pump gas. She observed them enter the store and discussed purchasing food. However, Dinickle did not get a good look at either person because of the masks they wore.

{¶ 9} During the subsequent police investigation, five 9 mm spent casings were recovered. Four of them were found in the victim's car, a Nissan Altima, and one was found in the Audi driven by the suspects. A Beretta 9 mm caliber pistol was recovered during a search warrant of the home of Daryl Bethel, Jr. A ballistics expert, Kristen Keoth, determined that the four spent casings retrieved from the Nissan were fired from the Beretta 9 mm pistol. The fifth casing found in the Audi came from the same gun. Although multiple guns were found at Scott's residence, none of them could be linked to the incident by either ballistics or DNA.[3]

---

[3] Chandler's DNA was found on Mr. Heredia's sleeve, affirmatively linking him to the crime.

{¶ 10} Detective David Borden[4] with the CDP Homicide Unit spoke with Dorothy Scott, Scott's mother, when CPD executed a search warrant at her home on February 13, 2021. During the conversation, Det. Borden informed Ms. Scott that they were investigating her son for a homicide at Gas USA the previous Wednesday. The conversation was captured on body-cam. Det. Borden showed Ms. Scott some pictures of individuals. Ms. Scott identified one of the individuals as her son and the other as someone nicknamed "Money" who was later identified as Chandler. Det. Borden then pointed to the clothing in the picture and asked Ms. Scott where the clothes were located. The two then proceeded to look for the clothes off-camera. At one point, the picture Det. Borden held was placed in proximity to the body-cam. The picture depicted an African-American male in a store setting wearing dark clothing. The background resembles the interior of the Gas USA station video.

{¶ 11} At trial, Det. Borden testified that Ms. Scott identified her son from still pictures taken from surveillance video at Gas USA. However, Ms. Scott did not remember identifying her son from those pictures when she testified. When shown similar pictures at trial, Ms. Scott testified that she could not identify the masked individuals. The defense objected when Det. Borden testified to his interaction with Ms. Scott and moved for a mistrial. The trial court denied the motion.

{¶ 12} In addition to pictures captured from the surveillance video, Detective Timothy Cramer obtained a search warrant for Scott's Instagram account for a date

---

[4] At the time of the incident, Borden was a detective with the homicide unit. At trial, he had been promoted to the rank of sergeant after ten years as a homicide detective and had worked in that role approximately 45 days.

range from February 9, 2021, through February 13, 2021. After receipt of the documents, he found that around midnight the morning of the shooting, multiple pictures were uploaded to Scott's Instagram that depicted him, Chandler, and a third unknown individual. The pictures revealed two weapons that appeared similar to the weapons depicted in the surveillance video. The clothing worn by Chandler and Scott in the Instagram pictures resembled the clothing worn by the suspects in the surveillance videos. The state presented side-by-side pictures to compare the clothing Scott was wearing on Instagram with the clothing worn by the suspects in the surveillance video.

{¶ 13} The jury found Scott guilty of all charges. The trial court found that Counts 1 through 3 (aggravated murder, murder, and involuntary manslaughter) merged for purposes of sentencing. The state elected to proceed with Count 1. The trial court sentenced Scott to life with the possibility of parole after 20 years, to run consecutively to the three years on the firearm specification. The trial court found that Counts 4, 5, and 8 (two counts of aggravated robbery and one count of robbery) merged. The state elected to proceed on Count 4. The trial court sentenced Scott to 11 years to run concurrent to Count 1. The three-year firearm specification on that charge would run consecutively to the underlying count. The trial court found that Counts 6 and 7 (two counts of felonious assault) would merge. The state elected to proceed on Count 7. The trial court sentenced Scott to eight years to run concurrently to Counts 1 and 4 and that the gun specifications would merge for the purposes of sentencing. Finally, the trial court sentenced Scott to 36 months on

Count 10, having weapons while under disability, to run concurrently to all other counts for an aggregate sentence of life with the possibility of parole after 26 years.

{¶ 14} Scott appeals assigning the following errors for our review:

## Assignment of Error No. 1

The trial court committed reversible error by denying appellant's motion for mistrial and by allowing Det. Borden to provide hearsay testimony as evidence in violation of Evid.R. 802 and the Fifth and Sixth Amendments to the United States Constitution.

## Assignment of Error No. 2

The juvenile division of common pleas court violated due process when it improperly relinquished jurisdiction over the charges against the juvenile appellant where probable cause was not established and therefore the general division of common pleas court lacked jurisdiction over the juvenile appellant. R.C. 2152.12(A); Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution.

## Assignment of Error No. 3

The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

## Assignment of Error No. 4

Appellant's convictions are against the manifest weight of the evidence.

## Assignment of Error No. 5

The court committed plain error by proceeding with the trial after jurors came forward stating that they were exposed to information that would improperly influence deliberations in violation of appellant's Sixth Amendment right to a fair trial.

## Assignment of Error No. 6

The court committed plain error and/or abused its discretion by allowing the opinion testimony of the forensic video specialist over appellant's objections where he was not declared an expert witness and his lay opinion testimony was inadmissible in violation of Crim.R. 16, Evid.R. 701.

## Assignment of Error No. 7

Appellant was deprived of his constitutional rights under the Sixth Amendment to the extent the court considered cross-examination opened the door to allow prejudicial hearsay testimony regarding identification of appellant and for failing to object to the opinion testimony of the forensic video specialist who was not properly deemed an expert witness.

## Law and Analysis

{¶ 15} For ease of analysis, we will address the assignments of error out of order. Accordingly, we will begin with the second assignment of error in which Scott argues that his right to due process was violated when the juvenile court found that there was probable cause for it to relinquish jurisdiction to the general division to try him as an adult.

## Probable Cause to Try Scott as an Adult

{¶ 16} Scott argues that there was insufficient evidence of identity because Ms. Scott denied identifying her son as one of the perpetrators depicted in surveillance photos. There was no other testimony identifying Scott as one of the perpetrators. Furthermore, Det. Thelemon Powell testified before the juvenile court, incorrectly, that clothing and/or shoes were obtained from Scott's home that matched items seen in the surveillance video. Finally, Scott argues, if there was sufficient evidence of identification, the evidence established that Chandler was the

shooter. Scott argues that he could not be tried as an adult based on a finding that he was complicit in Chandler's conduct.

**Standard of Review**

{¶ 17} We review the juvenile court's decision regarding a mandatory bindover proceeding as a mixed question of law and fact. *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, 897 N.E.2d 629, ¶ 51. Accordingly, we give deference to the trial court's determinations regarding the credibility of witnesses, but "we review de novo the legal conclusion whether the state presented sufficient evidence to demonstrate probable cause to believe that the juvenile committed the acts charged." *Id.*

{¶ 18} In a mandatory bindover proceeding, the juvenile court must transfer the case to the general division if a complaint has been filed alleging the child is delinquent for committing an act that would be charged as aggravated murder, murder, attempted aggravated murder, or attempted murder, if committed by an adult, and

> [t]he child was sixteen or seventeen years of age at the time of the act charged that would be aggravated murder, murder, attempted aggravated murder, or attempted murder and there is probable cause to believe that the child committed the act charged.

R.C. 2152.12(A)(1)(a)(i).

{¶ 19} Furthermore, when a child is alleged to be delinquent by reason of committing one or more acts that would be an offense if committed by an adult, if

any of those acts are a category-two[5] offense (aggravated robbery is one such offense) and there is probable cause to believe the juvenile committed the category two offense, the juvenile court must transfer the case to the general division if the child is sixteen or seventeen at the time of the act and either:

(a) the child has previously been adjudicated a delinquent child for committing an act that is a category one or category two offense and was committed to the department of youth services as a result of that adjudication; or

(b) the child is alleged to have had a firearm on or about his person or under his control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the crime.

R.C. 2151.12(A)(1)(b)(i) and (ii); 2151.10(A)(2)(a); 2151.10(A)(2)(b).

{¶ 20} There is no dispute that the crimes occurred in this matter. The entire incident was caught on video. Additionally, the parties stipulated that Scott was 16 at the time of the crime and that the victim died from gunshot wounds inflicted on February 10, 2021, as a result of a homicide. The primary question was whether the state presented sufficient evidence to meet the probable cause standard to establish Scott as one of the perpetrators.

{¶ 21} In order to establish probable cause in a bindover proceeding, the state must present credible evidence as to each element of the offense. *State v. Iacona*, 93 Ohio St.3d 83, 93, 752 N.E.2d 937 (2001). It must establish "credible evidence that 'raises more than a mere suspicion of guilt.'" *Id.* However, the state need not

---

[5] Category-two offenses are violations of R.C. 2903.03, 2905.01, 2907.02, 2911.01, or 2911.11 of the Revised Code; 2903.04 that is a felony of the first degree, and R.C. 2907.12 as it existed prior to September 3, 1996.

establish "'evidence of guilt beyond a reasonable doubt.'" *In re I.S.*, 8th Dist. Cuyahoga No. 112364, 2023-Ohio-3975, ¶ 68, quoting *Iacona* at 93. When making the probable cause determination, "the juvenile court must evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by the respondent that attacks probable cause." *Iacona* at 93.

{¶ 22} Although, as Scott points out, Ms. Scott denied identifying her son in any of the surveillance videos, the body-cam video of her conversation with Det. Borden contradicts her testimony. At the time the search warrant was executed, the police had not issued the search warrant for Scott's Instagram account and the still picture seen on the body-cam appears to be from the surveillance video introduced at the hearing. Ms. Scott is shown identifying the individuals in that picture as her son and Chandler. Additionally, Det. Borden then pointed to the clothing in the picture and asked Ms. Scott where they were located. The trier of fact could infer that the picture depicted the suspect and that the detective was asking Ms. Scott to locate the clothing worn by her son. Det. Cramer subsequently testified that the picture shown to Ms. Scott in the video was a still picture from surveillance footage at Gas USA on February 10, 2021.

{¶ 23} Nevertheless, although Ms. Scott denied identifying her son in the surveillance pictures, she did identify her son and Chandler in Instagram pictures posted to Scott's account the morning of the shooting. A side-by-side comparison of the clothing depicted on Instagram and stills from the surveillance video established that Scott was wearing similar clothing to the perpetrator. Scott was

depicted wearing a dark puffer jacket with a white Eddie Bauer logo on the breast with a hood, dark pants with holes in each knee, and black and white sneakers. Additionally, Scott is a tall, young man with a slim build. The surveillance videos depict two young men, one wearing a black puffer jacket with an Eddie Bauer logo on the breast, black pants with holes in the knees and black and white sneakers. Scott was also wearing a similar hat in the Instagram pictures to one observed on a suspect in the surveillance video. Accordingly, the state met its burden of production as to the identity of the perpetrator.

{¶ 24} Finally, Scott argues that if identification was established, he merely acted in complicity and could not be bound over to common pleas court. When addressing the issue of complicity, the Ohio Supreme Court has found that a juvenile is not subject to mandatory bindover unless the evidence establishes that the child, himself, had a firearm on or about the child's person or under the child's control while committing the act charged and the child displayed, the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of the act charged. *State v. Hanning*, 89 Ohio St.3d 86, 94, 728 N.E.2d 1059 (2000), referencing former R.C. 2151.26(B)(4)(b). The evidence establishes that Scott had a gun on his person in the commission of an aggravated robbery, a category-two offense, and brandished the firearm during the commission of the offense. The fact that Chandler is the person who fired his gun does not absolve Scott from his own conduct of participating in the aggravated robbery with a gun on his person.

{¶ 25} Based on the foregoing, the state met its burden to establish probable cause to support bindover of the case to the general division; accordingly, the second assignment of error is overruled.

**Det. Borden's Testimony**

{¶ 26} In the first assignment of error, Scott argues that the trial court committed reversible error when it denied a motion for a mistrial after the admission of hearsay testimony from Det. Borden. Scott specifically objects to the following exchange:

State:         When you showed [Ms. Scott] a still photo from camera 10 with the two individuals on it, what did she say?

Defense:     Objection.

Court:         Overruled.

Det. Borden: I'm sorry. Overruled? She said that's my son and that's Javon Chandler. She called him by his nickname. Money.

(Tr. 469.)

{¶ 27} The decision to deny or grant a motion for mistrial lies within the sound discretion of the trial court. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). Additionally, a trial court holds broad discretion when deciding whether to admit or exclude evidence. *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). A court of appeals will not disturb such an exercise of discretion unless there is a showing that the defendant suffered material prejudice. *State v. Miller*, 8th Dist. Cuyahoga No. 100461, 2014-Ohio-3907, ¶ 36, citing *Sage* at 182. A court abuses its discretion when it's conduct is "unreasonable, arbitrary, or unconscionable." *State*

*v. Hill*, 171 Ohio St.3d 524, 2022-Ohio-4544, 218 N.E.3d 891, ¶ 9, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "A mistrial should be declared only when the ends of justice so require and 'a fair trial is no longer possible.'" *Miller* at ¶ 36, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991).

{¶ 28} If a mistrial is based on erroneously admitted evidence, that evidence should be "'of an exceptionally prejudicial character such that its withdrawal from consideration by the jury cannot be expected to remove the harm.'" *State v. Marshall*, 2014-Ohio-4677, 22 N.E.3d 207, ¶ 29 (8th Dist.), quoting *United States v. Carr*, 5 F.3d 986, 993 (6th Cir.1993).

{¶ 29} Scott argues that Det. Borden's testimony was inadmissible hearsay because it was testimony regarding an out-of-court statement offered for the truth of the assertion. While Scott acknowledges that testimony regarding an out-of-court identification is admissible nonhearsay under Evid.R. 801(D)(1)(c), Scott argues that it was improper for Det. Borden to testify regarding the statement before Ms. Scott testified where Det. Borden's testimony did not corroborate Ms. Scott's testimony because she denied identifying her son.

{¶ 30} "A statement is not hearsay if the declarant testifies at trial and is subject to examination concerning the statement and the statement is one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification." Evid.R. 801(D)(1)(c). This identification may be established by the person making the identification or a third

person to whom or in whose presence the identification was made. *State v. Boston*, 46 Ohio St.3d 108, 124, 545 N.E.2d 1220 (1989); citing *State v. Lancaster*, 25 Ohio St.2d 83, 267 N.E.2d 291 (1971), paragraph five of the syllabus. In addition, the identifier must have testified and been subject to cross-examination and the prior statement must be admitted "not as original, independent or substantive proof of the identity of the accused as the guilty party, but as corroboration of the testimony of the identifying witness as to the identity of the accused." *Id.*

{¶ 31} Here, Ms. Scott did not testify until after Det. Borden testified and she denied identifying her son in surveillance photos. However, she acknowledged that she identified her son in pictures that she was shown during the execution of the search warrant at her home and she identified her son and Chandler in Instagram pictures in similar clothing at trial. Det. Borden testified on direct examination that he showed Ms. Scott the surveillance photos at her home. It was not until redirect that the state asked Det. Borden whether Ms. Scott made an identification and what that identification was. Regardless, this court has held that a prior identification is admissible even if the witness recants at trial when the evidence contains sufficient indicia of trustworthiness or reliability. *State v. Brown*, 8th Dist. Cuyahoga No. 73047, 1998 Ohio App. LEXIS 4219, 5 (Sept. 10, 1998), citing *State v. Houston*, 8th Dist. Cuyahoga No. 64574, 1994 Ohio App. LEXIS 52 (Jan. 13, 1994). Ms. Scott's statement was captured on body-cam video and the picture that was shown to her was visible and identifiable as a surveillance photo. Additionally, Ms. Scott could

have refused to identify the picture since the person depicted was wearing a mask. However, she immediately identified the suspects as her son and Chandler.

{¶ 32} Accordingly, the first assignment of error is overruled.

**Sufficiency of the Evidence**

{¶ 33} In the third assignment of error, Scott challenges his convictions based on the sufficiency of the evidence. Scott argues that there was insufficient evidence of identity, insufficient evidence that Scott was complicit in Chandler's actions; and insufficient evidence to support the verdicts on all counts.

{¶ 34} When examining the sufficiency of the evidence, we must

> examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 35} Sufficiency tests whether the state met its burden of production at trial. *State v. Toby*, 8th Dist. Cuyahoga No. 106306, 2018-Ohio-3369, ¶ 19, citing *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, ¶ 13. To meet the burden of production a party must "produce sufficient evidence to make out a prima facie case." *State v. Petway*, 2020-Ohio-3848, 156 N.E.3d 467, ¶ 47 (11th Dist.). "A reviewing court is not to assess 'whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.'"

*State v. Nelson*, 8th Dist. Cuyahoga No. 100439, 2014-Ohio-2189, ¶ 14, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 36} A conviction may not be overturned under this standard "unless we find that reasonable minds could not reach the conclusion [made] by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 37} A finding that a conviction is based on legally insufficient evidence bars retrial. *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316, ¶ 23. "'A reversal based on the insufficiency of the evidence has the same effect [as a verdict of not guilty] because it means that no rational factfinder could have voted to convict the defendant.'" *Id.* at ¶ 23, quoting *Thompkins* at 387.

{¶ 38} Scott challenges all the charges for which the jury found him guilty; however, a conviction consists of the offenses that a defendant was both found guilty of and sentenced. *McFarland* at ¶ 25 (a conviction consists of a guilty verdict *and* the imposition of a sentence or penalty; merger of counts moots a sufficiency of the evidence claim to the merged counts). Accordingly, we will only address the sufficiency of Scott's convictions for aggravated murder (Count 1); aggravated robbery (Count 4); felonious assault (Count 7); and having weapons while under disability (Count 10).

**Identification**

{¶ 39} There was no eyewitness testimony in this case. The police did not find Scott's DNA or fingerprints in the victim's car, they could not link any of the guns found at Scott's residence to the crime, nor were any cell phone records

obtained that linked Scott to the location of the crime. The evidence of identification came from the store surveillance videos, Instagram pictures, and Ms. Scott. In the Instagram photos, Scott can be seen wearing the same clothing as one of the suspects in the surveillance video, from head to toe, from the hat, pants with holes in the knees, and black and white sneakers. Chandler likewise appears to be wearing the same clothes on Instagram as the other suspect. While there is a third person in the Instagram photos, that person is clearly shorter than Scott and Chandler, while Scott and Chandler appear to be close to the same height. The suspects are roughly the same height in the surveillance video as well.

{¶ 40} After Ms. Scott identified her son during the execution of the search warrant, she repeatedly denied identifying her son in the surveillance photos. However, looking at the identification evidence in a light most favorable to the prosecution, there was sufficient evidence presented to establish that Ms. Scott identified her son in the surveillance photo. At the time she made the identification, the only pictures of the suspects obtained by the police were from the surveillance video. No other photos of Scott had been secured. Det. Borden testified the picture he showed Ms. Scott was from the surveillance video. Furthermore, the picture can be seen on the body-cam and is clearly a still photo from inside Gas USA as seen in the accompanying surveillance video from inside the store. Finally, Det. Cramer requested Instagram data from February 9 through February 13, covering immediately before the shooting up to the execution of the search warrant at the Scott home on February 13, 2021. Accordingly, when Det. Borden is seen in body-

cam footage pointing to the clothing worn by the person in the picture and asking Ms. Scott where the clothing was located, the picture had to be from the surveillance videos, and it had to be an image of Ms. Scott's son, because the CDP did not have the Instagram photos at that time.

{¶ 41} Therefore, there was sufficient evidence, if believed by the jury, to identify Scott as one of the perpetrators of the crime.

**Complicity and The Underlying Charges**

{¶ 42} In his brief, Scott separates his argument regarding complicity from his challenges to the underlying charges. A person who is alleged to be complicit may be charged either with complicity or with the principal offense. R.C. 2923.03(F). In the instant case, the state alleged both that Scott directly participated in the crimes and was complicit in Chandler's actions. Accordingly, we will address Scott's arguments together. Scott argues that the state failed to present sufficient evidence of complicity because there was no evidence that Scott knew Chandler would shoot or kill Mr. Heredia, that Scott had an operable firearm, or that anything was stolen from Mr. Heredia. Scott also contends that because there was no evidence of theft or that Scott possessed a deadly weapon, there was insufficient evidence to support his conviction for aggravated robbery. Further, he contends that there was insufficient evidence to support his conviction for felonious assault under Count 7 because there was no evidence that Scott knowingly by means of a deadly weapon caused physical harm to Mr. Heredia. Finally, Scott argues that there was insufficient evidence to support his conviction for having weapons while under

disability because the evidence presented to show the prior adjudication was not properly admitted into evidence, further the gun was never recovered, and there was no evidence that the gun used was operable.

{¶ 43} Evidence to support a conviction based on complicity by aiding and abetting must establish "'that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.'" *McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 316 at ¶ 29, quoting *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001). "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Johnson* at 245, quoting *State v. Pruett*, 28 Ohio App.2d 29, 273 N.E.2d 884 (4th Dist.1971).

{¶ 44} The elements that the state was required to establish for aggravated murder under R.C. 2903.01(B) were that Scott was complicit in purposely causing the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit aggravated robbery, as alleged in the indictment.

{¶ 45} For the charge of aggravated robbery under R.C. 2911.01(A)(1), the state needed to establish that in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense upon Angel Heredia, Scott did have a deadly weapon, to wit: a handgun, on or about his person or under his control and either displayed the weapon, brandished it, indicated he possessed it, or used it. For

felonious assault, the state had to establish that Scott aided and abetted another and knowingly caused or attempted to cause physical harm to Angel Heredia by means of a deadly weapon or dangerous ordnance, to wit: a handgun. R.C. 2903.11(A)(2).

{¶ 46} Finally, for having weapons while under disability, the state had to establish that Scott knowingly acquired, had, carried or used any firearm or dangerous ordnance and he had been adjudicated a delinquent juvenile for the commission of an offense, to wit: on May 29, 2019, Scott was adjudicated delinquent for felonious assault, a felony of violence if committed by an adult. R.C. 2923.13(A)(2).

{¶ 47} The video evidence established that Scott and Chandler went to the gas station to commit a crime. They parked at a pump but did not attempt to pump gas. They entered the store and discussed buying food but did not do so. They immediately moved their car next to Mr. Heredia's car after he parked. Shortly after Mr. Heredia returned to his car, both Chandler and Scott exited the Audi; they flanked Mr. Heredia's car with guns drawn. There was clearly an exchange between Mr. Heredia, Scott, and Chandler before Chandler fired the gun. They both then ran to the Audi and fled the scene.

{¶ 48} There is a noticeable gap between the perpetrators opening Mr. Heredia's door and the eventual shooting. The jury could reasonably infer that the suspects were attempting to forcibly obtain something from Mr. Heredia at gunpoint before shots were fired. Scott participated in all aspects of the aggravated

robbery before, during, and after the offense. Furthermore, although the evidence suggests that Scott did not shoot Mr. Heredia,

> [a] jury can infer an aider and abettor's purpose to kill where the facts show that the participants in a felony entered into a common design and *either* the aider or abettor knew that an inherently dangerous instrumentality was to be employed to accomplish the felony *or* the felony and the manner of its accomplishment would be reasonably likely to produce death.

*State v. Scott*, 61 Ohio St.2d 155, 165, 400 N.E.2d 375 (1980).

{¶ 49} Here, Scott acted in concert with Chandler throughout the crime. Additionally, Scott clearly had a firearm in his hands during the commission of this crime. The fact that the gun was not recovered and therefore could not be tested is not dispositive. "Where no shots are fired and the firearm is not recovered, such as in the instant case, circumstantial evidence, including the representations and actions of the person in possession of the gun, are of crucial importance when we evaluate the evidence of the firearm's operability." *State v. Robinson*, 8th Dist. Cuyahoga No. 101850, 2015-Ohio-1838, ¶ 25, citing *State v. Ware*, 9th Dist. Summit No. 22919, 2006-Ohio-2693, ¶ 13. Looking at all of Scott's actions, the jury could infer that the firearm he brandished was operable. Therefore there was sufficient evidence to support the convictions of aggravated murder, aggravated robbery, and felonious assault.

{¶ 50} During the course of the trial, the state sought to secure a stipulation to Scott's prior juvenile adjudication; however, the defense consistently refused to stipulate. The state introduced five certified documents: (1) the complaint; (2) a

copy of a fact sheet listing Ms. Scott as the mother; (3) a copy of the summons issued to Ms. Scott at her current address, the address of the search warrant; (4) Scott's plea to felonious assault, a second-degree felony; and (5) the disposition placing Scott on probation. The state did not introduce any accompanying testimony with these documents.

{¶ 51} In order to establish a prior conviction, including a prior adjudication of delinquency, "a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." R.C. 2945.75(B)(1). However, R.C. 2945.75(B)(1) is not the exclusive method of proving a prior conviction. *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, 982 N.E.2d 626 ¶ 1. Proof of the prior conviction can be accomplished by stipulation, admission, or by the testimony of a witness with knowledge of the prior conviction who can also identify the accused as the offender involved in said prior conviction. *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 43, citing *Gwen* at ¶ 22.

{¶ 52} Scott argues, in part, that the documents submitted by the state were not properly authenticated. However, the parties agreed that the documents were certified public records and therefore self-authenticating under Evid.R. 902(4); accordingly, Scott's argument that the documents were not properly authenticated is waived.

{¶ 53} The state introduced certified copies of the adjudication and disposition and introduced the additional documents to establish that Scott was the subject of the prior adjudication due to the date of birth, identity of the mother, and her address. The documents indicate that Scott's date of birth is January 24, 2005; however, no witness testified to Scott's date of birth at trial. The documents do list Ms. Scott as the mother of the child adjudicated delinquent, have her residing at the same address, and the child's name is Damarion Scott. The documents also indicate that the juvenile, at age 14, was 6'6" tall and weighed 140 pounds, but no one testified regarding Scott's current height and weight. Based on the foregoing, we find that the state presented insufficient evidence to establish that Scott was the person identified in the documents.

{¶ 54} Accordingly, the third assignment of error is sustained as to the conviction for having weapons while under disability. However, Scott's challenge to the remaining charges is overruled.

**Manifest Weight of the Evidence**

{¶ 55} In the fourth assignment of error, Scott argues that his convictions were against the manifest weight of the evidence. Specifically, Scott points to inaccuracies in the crime-scene log; that testimony in the juvenile court was inconsistent with testimony at trial; and that the gun Scott was holding in the Instagram photos did not look like the gun in the surveillance pictures. Finally, Scott argues the evidence of identification was unreliable and there were other potential suspects. Scott specifically focuses on the idea that there was confusion regarding

which picture was shown to Ms. Scott and that had the police followed guidance in R.C. 2933.83(6)(f) there would have been a reliable indicator of which photo was shown to her.

{¶ 56} "'[W]eight of the evidence involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Weight of the evidence is "'the evidence's effect of inducing belief.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. As the reviewing court, a decision to reverse a conviction based on the weight of the evidence stems from this court sitting as the "thirteenth juror" who "disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), citing *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The appellate court must consider all of the evidence in the record, the reasonable inferences to make from it, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Harris*, citing *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 57} During the trial, the defense was able to question witnesses about discrepancies in the testimony at the juvenile court probable cause hearing and the trial. However, at trial, witnesses made clear that there was no physical evidence

linking Scott to the crime scene. Additionally, none of the testimony at the probable cause hearing was presented at trial. The defense raised it solely to highlight that there was no evidence collected that was linked to Scott. Accordingly, the jury had to consider all of the evidence, including the fact that the police did not find any physical evidence that linked Scott to the crime.

{¶ 58} The inaccuracies in the crime-scene log were irrelevant in this case. The crime-scene log is used to record who enters and leaves the crime scene. The defense strategy was to challenge the identification and lack of evidence linking Scott to the crime. None of the evidence collected linked Scott to the crime, so inaccuracies in the crime-scene log were not dispositive of guilt or innocence.

{¶ 59} With respect to the guns depicted in the Instagram photos, Scott acknowledges that two of the guns depicted in the pictures were similar to the guns seen in the surveillance video. The fact that Scott was not depicted holding one of those guns is not dispositive. Additionally, as we have noted, although there is a third person in the Instagram photos, it is clearly evident that that person is noticeably shorter than both Scott and Chandler. Furthermore, the suspects appear to be the same height as each other, and so do Scott and Chandler.

{¶ 60} Finally, with respect to the photo identification, although Det. Borden could have had Ms. Scott sign the picture, the fact that he did not is not dispositive. This was a question of credibility. Det. Borden testified he showed Ms. Scott a still picture from the surveillance video. Ms. Scott testified that she never saw those

pictures and did not identify her son. The jury, looking at all the testimony, found Det. Borden's testimony more credible.

{¶ 61} Based on the foregoing, there is no indication on this record that the jury lost its way or that the conviction was a manifest miscarriage of justice. Accordingly, the fourth assignment of error is overruled.

{¶ 62} In the fifth and sixth assignments of error, Scott argues that the trial court committed plain error, first, for continuing with the trial after jurors came forward indicating that they were exposed to information that would improperly influence deliberations and second, by allowing the opinion testimony of the state's forensic video specialist because he was never declared an expert and his lay opinion violated Crim.R. 16 and Evid.R. 701.

**Plain Error Standard**

{¶ 63} If a defendant fails to object at trial, he waives all but plain error. Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 28.

> To constitute plain error, there must be: (1) an error, i.e., a deviation from a legal rule, (2) that is plain or obvious, and (3) that affected substantial rights, i.e., affected the outcome of the trial. *State v. Pratts*, 8th Dist. Cuyahoga No. 104235, 2016-Ohio-8053, ¶ 34, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). A defendant is entitled to a plain error finding where it is established that but for the error, the outcome of the trial clearly would have been different. *State v. Johnson*, 8th Dist. Cuyahoga No. 99715, 2014-Ohio-2638, ¶ 94, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978); *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001). Even if the plain error standard is met, courts should only notice it "with the utmost caution, under exceptional circumstances and only to prevent a manifest

miscarriage of justice." *Long*, 53 Ohio St.2d at 91, 372 N.E.2d 804, paragraph three of the syllabus.

*State v. White*, 8th Dist. Cuyahoga No. 110452, 2022-Ohio-2130, ¶ 37.

{¶ 64} If a defendant fails to call an error to the attention of the trial court, he must "'demonstrate a reasonable probability that the error resulted in prejudice — the same deferential standard for reviewing ineffective assistance of counsel claims,'" in order to obtain relief. *State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821, ¶ 33, quoting *Rogers* at 385, ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

**The Jury**

{¶ 65} After the lunch break on day two of trial, Juror No. 4 told the court's bailiff that she overheard a phone call by one of Scott's family members and that the speaker was very loud. When questioned, the juror indicated the call was very animated and the family member felt the case should be reviewed by the Supreme Court. She also mentioned something about how they had signed up for a trial by jury. At the time this conversation had occurred, Scott had not revoked his earlier waiver of his right to a jury as to two counts, which were to be heard to the bench. Once Juror No. 4 understood the gist of the call, he put on his headphones to prevent hearing anything further. Juror No. 4 indicated that the statements could potentially affect his ability to deliberate because the implication was raised that something was wrong with the proceedings, i.e., that the system was failing the family. Juror No. 4 denied speaking of the conversation to other jurors but told the

court that other jurors were in the vicinity when Scott's family member was speaking, and Juror No. 3 asked when they returned to the jury room whether anyone heard the family member.

{¶ 66} Juror No. 3 told the court that he heard the conversation and a family member was listing the charges in a loud voice. Nothing he heard however would influence him one way or the other in his deliberations. He did speak of the incident to other jurors; however, they heard the loud tone but did not hear any specifics.

{¶ 67} After speaking to these two jurors, the state requested the removal of Juror No. 4 and the defense agreed. Both parties then requested a general instruction to the jury regarding the lunchroom conversation and anything that the jury might have overheard. After excusing Juror No. 4, the court addressed the remaining jurors, including Juror No. 4's replacement. Juror No. 2 indicated they heard a sentence, but "nothing of substance." Juror No. 7 heard the "loudness" but could not hear what was said. No other juror acknowledged hearing the conversation. After this interaction, the case proceeded. The defense did not request a new trial.

{¶ 68} Before this court, the defense argues that a new trial should have been granted based on the number of jurors "who acknowledged hearing/witnessing the out of court statements and Juror No. 4's insistence that it would impact his ability to be impartial." The defense argues that the jury was "tainted." We disagree.

{¶ 69} This court has held that the proper procedure when a trial court learns that a juror was subject to an improper outside communication is to hold a hearing

to determine whether the communication biased the juror. *State v. McKeller*, 8th Dist. Cuyahoga No. 78254, 2001 Ohio App. LEXIS 4657 (Oct. 18, 2001), citing *State v. Phillips*, 74 Ohio St.3d 72, 656 N.E.2d 643 (1995). A trial court has broad discretion in determining whether to declare a mistrial or replace an affected juror. *Id.*

{¶ 70} Juror No. 4 was the only juror who heard what was said and felt it affected his ability to be impartial going forward. None of the other jurors heard the statement or felt influenced by the fact that Scott's family member was having a loud conversation in the lunchroom. A trial court may rely on a juror's representation that they can be impartial and that averment is not inherently suspect. *Id.*, citing *Phillips* at 89.

{¶ 71} As there was no error, Scott has failed to establish that the trial court plainly erred when it did not sua sponte declare a mistrial and grant a new trial.

{¶ 72} Accordingly, the fifth assignment of error is overruled.

## Forensic Video Specialist's Testimony

{¶ 73} In the sixth assignment of error, Scott argues that it was plain error and/or an abuse of discretion for the trial court to allow the opinion testimony of the state's forensic video specialist when he was not declared an expert witness and his lay opinion violated Crim.R. 16 and Evid.R. 701.

{¶ 74} The state introduced the testimony of Tom Ciula ("Ciula") as a forensic video specialist; however, they did not seek to qualify Ciula as an expert witness. Ciula collected the video surveillance from Gas USA. During the course of his

testimony, the defense objected when the state sought to have Ciula describe what the suspects were wearing in the video, including the logo on the left hand front side of one of the jackets; what the victim was wearing when he entered the store; the defense objected to a question asking whether the video showed two gentlemen exiting an Audi, one wearing a black jacket exiting the passenger side and one wearing a gray jacket exiting the driver's side; and to questions that asked the witness to address a color issue with one of the videos.

{¶ 75} The testimony of a lay witness regarding their opinions or inferences is limited to "those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid.R. 701. A court has wide latitude in the admission or exclusion of this testimony, and thus we review the trial court's decision for an abuse of discretion. *State v. Koch*, 2d Dist. Montgomery No. 28041, 2019-Ohio-4182, ¶ 49. Although the defense objected to certain questions and answers, they did not challenge Ciula's testimony as improper lay witness testimony; accordingly we review the admission of the testimony for plain error.

{¶ 76} Under Evid.R. 701, a witness's opinion is rationally based on their perception when the witness has firsthand knowledge of the subject of his testimony and his opinion is one a rational person would form on the basis of observed facts. *State v. Mulkey*, 98 Ohio App.3d 773, 649 N.E.2d 897 (10th Dist.1994); *State v. Miller*, 2015-Ohio-519, 27 N.E.3d 564, ¶ 37 (8th Dist.). Testimony is "helpful" where

it aids the trier of fact in understanding the witness's testimony or determining a fact in issue. *Id.* While Ciula had firsthand knowledge of the video and could testify to its contents, his testimony was not necessary to aid the jury in understanding his testimony or determining any facts at issue. The video spoke for itself, and the jury was capable of examining it and comparing the clothing in the surveillance video to Scott's Instagram posts. Accordingly, it was an error to allow Ciula to testify about the contents of the video. His testimony was not necessary to aid the jury to understand his testimony or determine any fact at issue; the jury was capable of making these determinations for itself without Ciula's assistance. However, the admission of Ciula's testimony was harmless error. The jury was presented with the video and had an opportunity to review it and determine for themselves what it contained. Additionally, the defense cross-examined Ciula regarding his answers and pointed out issues of concern, for instance, that it was possible the suspects' jackets were light gray and dark gray rather than black and gray as Ciula testified.

{¶ 77} Based on the foregoing, Scott has failed to establish that the admission of Ciula's testimony was plain error, i.e., an error of such magnitude that the outcome of the trial would have been different if it had not occurred. Accordingly, the sixth assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶ 78} Finally, in the seventh assignment of error, Scott argues that he received ineffective assistance of counsel when counsel opened the door on cross-

examination to prejudicial testimony on redirect from Det. Borden and for failing to object to Ciula's testimony.

{¶ 79} A defendant demonstrates ineffective assistance of counsel when he establishes that "counsel's performance was deficient and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial." *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When determining whether an attorney's performance fell below an objective standard of reasonableness, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689. "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 721 N.E.2d 52 (2000), citing *Strickland* at 690, 104 S.Ct. at 2066, 80 L.Ed. 2d at 695.

{¶ 80} Based on our analysis of Scott's first and fifth assignments of error, we find that Scott has failed to establish he was prejudiced by the alleged errors. The record presented sufficient evidence of identification even if we remove Det. Borden's testimony on cross-examination from the record. In regard to Ciula's testimony, it did not address the ultimate issue. He testified solely to how he interpreted the surveillance video. The defense challenged some of his conclusions. Consequently, Scott has failed to establish that counsel's performance was deficient or that the outcome of the trial would have had a different result.

{¶ 81} Accordingly, the seventh assignment of error is overruled.

{¶ 82} Judgment affirmed in part; the conviction for having weapons while under disability is reversed and remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_Emanuella D. Groves_
EMANUELLA D. GROVES, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
MARY J. BOYLE, J., CONCUR